## In re COLLINS.

(No. 3,718.)

(Submitted September 7, 1915.   Decided September 18, 1915.)

[152 Pac. 40.]

*Criminal Law—Imprisonment—Indeterminate Sentences—Statutes—Duty of Court—Habeas Corpus—Defective Judgment.*

Criminal Law—Indeterminate Sentences—Statutes.
  1.   The effect of Chapter 14, Laws of 1915, is to amend the provisions of the Penal Code relating to terms of imprisonment in the state prison, so as to take from courts and juries the power to fix definite terms, and to impose upon them the mandatory duty to fix in lieu thereof indeterminate sentences in all cases, other than those arising out of the crimes expressly excepted in section 1 of the Act.

Same—Improper Judgment.
  2.   A judgment in a criminal case fixing defendant's punishment "at no less than two nor more than two years" in the state prison, in conformity with the verdict of the jury, *held* objectionable as contrary to the spirit and purpose of Chapter 14, Laws of 1915.

Same—*Habeas Corpus*—Reformation of Judgment—Release from Imprisonment.
  3.   A judgment rendered in a criminal cause in disregard of the provisions of Chapter 14, Laws of 1915, *supra,* requiring the imposition of indeterminate sentences, *held* not entirely void so as to warrant the unconditional release of defendant on *habeas corpus,* but capable of being corrected on motion within a reasonable time.

  [As to power of court to revise or amend sentence, see note in 79 Am. Dec. 779.]

At chambers.

Original application of C. J. Collins for writ of *habeas corpus.* Conditional order of release.

*Mr. Franklin W. Collins,* for Complainant.

*Mr. W. H. Poorman,* Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BRANTLY delivered the opinion.

*Habeas corpus.*   The complainant is now confined in the state prison under a judgment of conviction rendered by the district court of Silver Bow county, upon the verdict of a jury finding him guilty of the crime of passing a fictitious check with intent to defraud one Julia Morello.   The verdict recites: ''We, the

jury in the above-entitled action, find the defendant, C. J. Collins, guilty of the crime of passing a fictitious check, and fix his punishment at not less than two (2) nor more than (2) years in the state prison." The judgment was rendered in conformity therewith. The complainant seeks his release from the imprisonment imposed thereby upon the assumption that the verdict and judgment are void, in that they do not conform to the provision of the statute enacted by the fourteenth legislative assembly, entitled: "An Act providing for indeterminate sentences of persons convicted of crime, and for the parole of such persons, and prescribing the duties of officials in connection therewith."

Sections 1 and 2 of the Act are as follows:

"Sec. 1. Whenever, after the passage and approval of this Act, any person shall be found guilty of any crime or offense punishable by imprisonment in the state prison, except treason, murder in the first degree, rape by force, or administering poison to a human being with intent to kill, the court must instead of fixing the punishment at a definite term, provide in the sentence and judgment that the defendant be confined in such prison for not less than a certain time, nor longer than a certain time, both the minimum and the maximum time shall be named in such judgment, and such minimum time shall not be less than the minimum time named in law prescribing punishment for such crime or offense nor shall the maximum time named in such judgment exceed the maximum punishment named in such law; provided that in any judgment under this Act the minimum time shall not be less than six months. In all cases where the punishment is fixed by the jury the minimum and maximum time to be served shall be set forth in the verdict.

"Sec. 2. Any person receiving an indeterminate sentence as provided in this Act may, in the discretion of the governor and state board of prison commissioners, be paroled at any time after he shall have served in such prison the minimum time specified in such judgment."

Section 3 is not pertinent here, further than in so far as it declares that the provisions of sections 1 and 2 shall not be deemed to amend existing laws relating to paroles, except that any convict may be paroled after serving the minimum time prescribed in section 1. Prior to the enactment of this statute the provisions of the Revised Codes imposing imprisonment in the state prison as punishment for felonies prescribed the extent of the term of service in each case, with reference to some fixing a term not to exceed a certain maximum number of years, and with reference to others providing that the imprisonment should not be less than a minimum nor greater than a maximum number of years, and requiring the court or the jury, according as the one or the other assessed the punishment, to designate a definite term below the maximum, if a maximum only were designated, or between the minimum and maximum number of years designated. Sections 8635 and 8572 of the Revised Codes are illustrative examples. With some exceptions, all convicts were, at the discretion of the governor and state board of pardons, entitled to be paroled—those serving time sentences, at the expiration of one-half of the term, or, in cases of long terms, at the expiration of twelve and a half years; and those serving life sentences, at the expiration of twenty-five years. (Rev. Codes, sec. 9573.) The purpose of the new enactment was to so [1] change the rule relating to sentences as to require the court or jury to impose indeterminate sentences in all cases other than those arising out of crimes expressly excepted in section 1, *supra,* and to lodge in the governor and board of prison commissioners a discretionary power to grant paroles in all cases in which such sentences have been imposed—*i. e.,* in all cases other than those excepted—at the expiration of the minimum term fixed. The effect of it is, apparently, to amend all the provisions of the Codes relating to terms of imprisonment so far as they are inconsistent with its provisions, and also the provisions relating to the time at which paroles may be granted; for it expressly takes from courts and juries the power to fix definite terms of imprisonment, and enjoins the imposition of indeterminate sen-

tences instead thereof. It also greatly enlarges the discretion of the governor and the board of prison commissioners with reference to paroles. Evidently the end sought to be attained was to devise a method of treatment of convicts which would encourage in them a disposition to reform, by holding out to them the hope of securing, by reason of exemplary conduct during the minimum term of service, release under the restraints of a parole from actual confinement at profitless labor, and the enjoyment of comparative freedom to pursue some profitable vocation yielding a support to themselves and families, when they have families, and incidentally to regain their standing as useful citizens in the community. There is also held out the hope that by continued good behavior restoration of all civil rights by an absolute pardon will speedily be obtained. ·Evidently, too, the conception of the legislature, as indicated by the use of the term "indeterminate," was that the minimum and maximum terms fixed should be so adjusted as to allow a substantial period of time to intervene during which the application for parole might be made, and the governor and board of prison commissioners might determine its merits by inquiry touching the conduct of the applicant, in order to ascertain whether or not he has exhibited a disposition to reform, and hence is entitled to invoke the discretionary power lodged in them. This being manifestly the end sought to be accomplished, it is mandatory upon the courts to enforce the statute in every case, according to its spirit. It is not to the purpose to say that the provision does not prohibit the fixing of the minimum and maximum so that both will expire on the same date, because they may, in the nature of things, approach each other until the difference disappears. This view is not in accord with the spirit of the provision, and would defeat effectually the purpose had in view by the legislature. It is entirely clear that the jury in returning the verdict in [2] question here, and the court in pronouncing the judgment, ignored the spirit and purpose of the provision, with the result that the term of service imposed upon the complainant is as definite as if the jury had said, "We, the jury, find the de-

fendant guilty, *etc.*, and fix his punishment at confinement in the state prison for a term of two years." Though under section 9329, Revised Codes, the jury may in any case involving discretion as to its extent assess the punishment, as they may also under the new statute, they may not assess a punishment not prescribed by law. The limitations imposed upon them are the same as those which limit the power of the court. The one cannot go further than the other. When, however, the jury [3] has found the defendant guilty, but, as in this case, have assessed a punishment not authorized by law, the verdict is not entirely void, as counsel contends, so that the court is without authority to pronounce judgment upon it at all. Inasmuch as the jury had found the defendant guilty, though it erred in assessing the punishment, the court should have proceeded to pronounce judgment in conformity with the statute, disregarding the assessment of punishment by the jury as erroneously made. The duty of the court in such cases is expressly pointed out in section 9330 of the Revised Codes, as follows: "When a jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, or assess a punishment not authorized by law, and in all cases of judgment by confession, the court must assess and declare the punishment, and render judgment accordingly."

The court might have required the jury to amend the verdict so as to make it conform to the statute. Having omitted to do this, it should have pursued section 9330, *supra.*

The judgment in its present form, therefore, does not furnish any authority for holding the complainant in custody. (*State* v. *District Court,* 35 Mont. 321, 89 Pac. 63.) But, notwithstanding this is true, I do not think the complainant is entitled to an unconditional order of release. If the case were before the court for review on appeal, and the error in this judgment were the only one complained of, a new trial would not be ordered. The case would be remanded to the trial court, with directions to reform the judgment to meet the requirement of the statute. I am of the opinion, therefore, that it is

still within the power of that court, upon proper application, to set the judgment aside and to render the proper judgment. I can see no reason why such an error may not be corrected on motion in a criminal as well as in a civil case.

In order, therefore, that justice may not be entirely defeated, I have concluded to direct: That the complainant be released from custody at the end of fifteen days from this date, unless the attorney general shall in the meantime have procured from the district court of Silver Bow county a reformation of the judgment so that it will meet the requirement of the statute as herein construed.