PEOPLE *v.* LESSARD

PEOPLE *v.* SCHULTZ

1. Criminal Law—Sentence—Duration—Statute.

Statutory provisions governing the imposition of criminal sentences do not permit a sentencing judge to set a definite term of imprisonment but do require that he set a minimum term and to state the maximum penalty in passing sentence in all cases except those involving crimes where the only punishment provided is life imprisonment, and that he examine the defendant, either before or at time of sentencing, and enter into the court minutes information tending to indicate the causes of defendants' criminal character or conduct and other pertinent facts (MCLA §§ 769.8, 769.9).

2. Criminal Law—Statutes—Indeterminate Sentence—Purpose.

The design of the indeterminate sentence law is to reform criminals, to convert bad citizens into good citizens, and to protect society and this can be accomplished by returning convicted prisoners to society when they have shown by their conduct that they may turn from their criminal careers.

3. Criminal Law—Statutes—Indeterminate Sentence—Legislative Intent.

The legislature clearly intended that the sentencing court, in the exercise of its discretion, fit an indeterminate sentence to the needs of a particular case and the requirements of society and also desired, as other statutes clearly show, that the action of the parole board complement the trial court's actions through careful, frequent and individual evaluation of a prisoner's rehabilitative progress (MCLA §§ 769.8, 791.231 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 527, 534.
[2-4] 21 Am Jur 2d, Criminal Law §§ 540, 581, 592, 614.
[5] 21 Am Jur 2d, Criminal Law §§ 533, 572.

4. Criminal Law—Sentence—Minimum Sentence.

    Setting minimum sentences one day less in duration than the maximum sentences provided by statute, constituted reversible error in sentencing and an abuse of discretion even though the trial judge sincerely believed that convicted criminals were being automatically released from prison, regardless of their rehabilitative progress, as soon as their minimum sentence had been served.

5. Appeal and Error—Remandment—New Sentence—Discretion of Trial Court.

    Trial courts are required to impose sentences within their sound discretion, in accord with their evaluation of a defendant as an individual and the Court of Appeals, in remanding for a new sentence, will not dictate what the minimum sentence should be nor attempt to determine what sort of sentence complies with the requirements for an indeterminate sentence.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 February 3, 1970, at Lansing. (Docket Nos. 7,103, 7,735.) Decided February 27, 1970.

Leonard Schultz was convicted of indecent liberties with a child under 16 years. Robert Lessard was convicted, on his plea of guilty, of attempted breaking and entering with intent to commit felony or larceny. Defendants appeal validity of indeterminate sentences where the minimum term is one day less than the maximum. Remanded for new sentence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, and *Edward Sosnick,* Assistant Prosecuting Attorney, for the people.

*Charles J. Porter,* for defendant Lessard on appeal.

*Douglas Chartrand,* for defendant Schultz on appeal.

Before: LESINSKI, C. J., and McGREGOR and V. J. BRENNAN, JJ.

LESINSKI, C. J. On January 17, 1969, defendant Leonard Schultz was convicted by a jury of indecent liberties with a minor child.[1] On February 13, 1969, he was sentenced to a term of nine years, 364 days to ten years in prison. On January 13, 1969, defendant Robert Lessard pled guilty to attempted breaking and entering with intent to commit felony or larceny.[2] On February 13, 1969, he was sentenced to a term of four years, 364 days to five years in prison. Since both defendants question the validity of an indeterminate sentence where the minimum term is set one day less than the maximum, we have consolidated the cases on appeal.

On the day that both defendants were sentenced, the trial judge, Circuit Court Judge Arthur Moore, announced a new sentencing policy. On May 28, 1969, during a hearing on a motion for new trial brought by defendant Lessard's codefendant, Judge Moore articulated his policy:[3]

"For five years * * * I gave every person who had to be incarcerated in prison the very lowest minimum, which is set by statute, which is one year. And I advised the corrections department that I expected them to use their full discretion and release people whenever in their judgment the safety of society and the corrective treatment had been

---

[1] MCLA § 750.336 (Stat Ann 1954 Rev § 28.568).
[2] MCLA § 750.92 (Stat Ann 1962 Rev § 28.287); MCLA § 750.110 (Stat Ann 1969 Cum Supp § 28.305).
[3] The transcript of the hearing on this motion is included in the record in defendant Lessard's case.

adequate for that individual. And I attempted to employ indeterminate sentence in its fullest extent for that reason.

"Now my experience * * * was that they paid no attention to their obligation to release when they found that correction had taken effect, and that the public was protected, but instead they pursued the same policy concerning my effort to have full indeterminate sentence as they did with every other judge who used his prerogative of setting his sentencing date judgment on minimum imprisonment as an absolute. * * *

"I have a great deal of respect for the corrections department * * * and perhaps there are many reasons why they did what they did, but the long and short of the story is, * * * they made no differential between my effort to give fully indeterminate sentence and the efforts of other judges to set a hard and fast minimum. And I resented it because I thought, I still believe that indeterminate sentence, with the wisdom of the psychologists, the psychiatrists, the corrective authorities, the social workers, and so forth, who ought to be attached to a prison system if it is going to be a corrective system, I then believed and I still believe that that skill of professional people should be used, instead of the present skill of a lawyer at the time of sentencing, who knows nothing about the future except as he guesses at it as to the future behavior or the future risk of a specific individual.

"That was the purpose, that was my disappointment. * * * I have advised the corrections department in relation to all my cases, that I will welcome their recommending earlier releases in any case and that I will cause some skilled people to review the matter based upon what they then know and what they then can tell us, and what they know about it originally, and will not stand in the way of an earlier release if it is a scientifically advisable release.

"What I am saying is, therefore, that your respondent here may be released at any time short of the minimum term providing the corrections department set the matter in motion after they have reviewed the matter and believe he is a creditable risk to society and a reformed individual sufficiently so that he will not likely be a danger to society.

"Now this gives your respondent in my judgment under the total statutes of the state, a better opportunity for earlier release and for what might truthfully be termed real indeterminate sentence, than the past policies of the corrections department and the policies of the judges of this state whereby they eliminate this possibility of earlier release and stand by the minimum sentence of the judge as the very earliest period for release less good time and special good time.

"Now one other thing. The records of the corrections department in the last few years, not this year, indicated that the failures of respondents on parole are in all cases above ten percent and in some cases running as high as forty, fifty, or sixty percent, and that there is no rhyme or reason as to release based upon probability of failure of sentence in specific types of cases.

"For instance, by and large the people who, commit murder are exceptionally good risks on parole, yet they are invariably detained far beyond any scientifically advised need or corrective treatment or longer detention. Unless we revert to the antiquated and I hope discontinued policy of punishing people for the purpose of punishing.

"On the other hand, the persons who steal cars invariably repeat to a high degree and should probably be kept in prison for many years beyond the period of sentence available, otherwise I would say that perhaps half of them are going to repeat and injure society later and the records so show.

"Now I mention all this because I think it is my duty and my job as a sentencing judge to be aware

of these matters and try to do exactly what you in your good judgment as an excellent lawyer have tried to do for your individual client. The only thing is, I think I have a broader responsibility than you do, and it applies to every individual.

"It is for this reason that I believe the policy which I have established of advising the corrections department that they may release at any time on their recommendation, providing they gain my support and furnish some scientific reasons or case history or background information which I can review with the help of some experts here, including our local probation department and the policy that I have established, that I will follow their recommendation provided there is no obvious abuse of discretion in that regard and providing there are reasons for it and I think this comes nearer to the purpose of indeterminate sentence than the present existing policy carried on by the corrections department now."

It is claimed that this policy contravenes the spirit and intent of the indeterminate sentence law, MCLA § 769.8 (Stat Ann 1954 Rev § 28.1080), by failing to consider individual factors as bearing on the length of the minimum sentence:

"When any person shall hereafter be convicted for the first time of crime committed after this act takes effect, the punishment for which prescribed by law may be imprisonment in the state prison at Jackson, the Michigan reformatory at Ionia, the state house of correction and branch of the state prison in the upper peninsula, the Detroit house of correction, or any other prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term except as hereinafter provided. The maximum penalty provided by law shall be the maximum sentence in all cases except as herein provided and shall be stated by the judge in passing sentence. He shall before or

at the time of passing such sentence ascertain by examination of such convict on oath, or otherwise, and by such other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of such convict, which facts and such other facts as shall appear to be pertinent in the case, he shall cause to be entered upon the minutes of the court."

Although both the Michigan Supreme Court and this Court have repeatedly refused to review sentences fixed within the maximum provided by statute,[4] the expressed "new policy" of the trial judge mandates a consideration of defendants' claim.

The purpose of indeterminate sentence laws has been stated by our own courts and by the courts of other states. In *People v. Cook* (1907), 147 Mich 127, 132, the Supreme Court said:

"The design of the indeterminate sentence law is to *reform criminals* and to *convert bad citizens into good citizens,* and thus *protect society.* In order to accomplish this result, the theory is that, when the prisoner has shown by his conduct that he may turn from his criminal career, he should have an opportunity, under favorable circumstances, to make the test. He is in prison for a definite time. Any release therefrom is a favor to him." (Emphasis supplied.)

In *State v. Moore* (1952), 21 NJ Super 419, 91 A2d 342, the Court stated (citing *Ex parte Collins* [1915] 51 Mont 215, 152 P 20):

"The purpose of the new enactment was to so change the rule relating to sentences as to require the court or jury to impose indeterminate sentences in all cases other than those arising out of crimes

---

[4] See *People v. Guillett* (1955), 342 Mich 1; *People v. Pate* (1965), 2 Mich App 66; *People v. Brashaw* (1967), 9 Mich App 128; *People v. Poole* (1967), 7 Mich App 237.

expressly excepted in section 1, *supra,* and to lodge in the Governor and board of prison commissioners a discretionary power to grant paroles in all cases in which such sentences have been imposed  *  *  * at the expiration of the minimum term fixed.   The effect of it is, apparently, to amend all the provisions of the Codes relating to terms of imprisonment so far as they are inconsistent with its provisions, and also the provisions relating to the time at which paroles may be granted; for it expressly takes from courts and juries the power to fix definite terms of imprisonment, and enjoins the imposition of indeterminate sentences instead thereof.   It also greatly enlarges the discretion of the Governor and the board of prison commissioners with reference to paroles.   Evidently the end sought to be attained was to devise a method of treatment of convicts which would encourage in them a disposition to reform, by holding out to them the hope of securing, by reason of exemplary conduct during the minimum term of service, release under the restraints of a parole from actual confinement at profitless labor, and the enjoyment of comparative freedom to pursue some profitable vocation yielding a support to themselves and families, when they have families, and incidentally to regain their standing as useful citizens in the community.   There is also held out the hope that by continued good behavior restoration of all civil rights by an absolute pardon will speedily be obtained.   Evidently, too, the conception of the Legislature, as indicated by the use of the term 'indeterminate,' was that the minimum and maximum terms fixed should be so adjusted as to allow a substantial period of time to intervene during which the application for parole might be made, and the Governor and board of prison commissioners might determine its merits by inquiry touching the conduct of the applicant, in order to ascertain whether or not he has exhibited a disposition to reform, and hence is entitled to invoke the discretionary power lodged in them."

It is clear that the legislature intended that the sentencing court fit an indeterminate sentence, in the exercise of its discretion, to the needs of the particular case and the requirements of society. See *In re Southard* (1941), 298 Mich 75, 82. Other statutes make it just as clear that the legislature also desired that the parole board's actions complement the actions of the trial court through careful, frequent and individual evaluation of the prisoner's rehabilitative process.[5] As evidenced by the record in this case, it is Judge Moore's considered opinion that the parole board has not been considering individual factors as a basis of parole but rather has been automatically releasing most prisoners, irrespective of their rehabilitation or the interests of society, upon expiration of their minimum terms.

While the motives of Judge Moore in adopting his sentencing policy are laudatory as they show a genuine concern for the penal problems we face today, the action as it concerns the individual defendants constitutes reversible error in sentencing. The trial court failed to exercise discretion in setting the individual defendant's minimum sentences.

In remanding for new sentence, we do not intend to dictate to the trial court what the minimum sentence should be nor will we attempt to determine what sort of sentence complies with the requirements for an indeterminate sentence. The trial court is required to impose sentence within his sound discretion in accord with his evaluation of the defendant as an individual.

Remanded for new sentence.

All concurred.

---

[5] See MCLA § 791.231 *et seq.* (Stat Ann 1954 Rev § 28.2301 *et seq.*).