PEOPLE *v.* HAGGITT

OPINION OF THE COURT

1. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—INDETERMI-
NATE SENTENCE ACT—PAROLE.

A minimum sentence which is only one month less than the
maximum sentence is not *per se* unconstitutional and does not
defeat the rehabilitative purpose of the indeterminate sentence
act, because the Legislature has provided for the reduction of
the sentences and speeding up of parole eligibility by good time
and special good-time allowances, parole consideration for even
serious offenders after 10 years, and eligibility of all offenders
for early parole with the consent of the sentencing judge, thus
allowing every prisoner to reduce his prison sentence and to
move up the time of his parole eligibility (MCLA §§ 769.8,
769.12, 791.233, 791.234, 800.33, 800.103).

2. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—INDETERMI-
NATE SENTENCE ACT—PAROLE BOARD'S DISCRETION.

A minimum sentence which is nearly as long as the maximum
sentence does not *per se* violate the legislative purpose in the
indeterminate sentence act and does not constitute an abuse of
discretion, because every sentence, except the shortest possible
sentence, limits the area of the parole board's discretion and
because there is never a point at which the parole board is
completely deprived of the power to exercise its discretion
(MCLA § 769.8).

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 21 Am Jur 2d, Criminal Law §§ 540, 592, 614.
[6, 9, 11, 12] 21 Am Jur 2d, Criminal Law § 540.
  Validity, under indeterminate sentence law, of sentence fixing
  identical minimum and maximum terms of imprisonment. 29
  ALR2d 1344.
[7, 8] 21 Am Jur 2d, Criminal Law §§ 525, 577, 582.
[10] 21 Am Jur 2d, Criminal Law §§ 540, 581, 592, 614.

3. CRIMINAL LAW—PAROLE BOARD'S POWER—SENTENCING—INDE-
TERMINATE SENTENCE ACT—LEGISLATIVE INTENT.

> The Legislature did not intend by enacting the indeterminate
> sentence act to create a power in the parole board co-equal
> with the judicial power to sentence; the judicial power to
> sentence and the exercise of judicial discretion when sentencing
> are first in time and superior to the exercise by the parole
> board of its statutory duties (MCLA § 769.8).

4. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—APPEAL AND
ERROR—STANDARD OF REVIEW.

> A minimum sentence approximating the statutory maximum is
> not *per se* an abuse of judicial discretion; in the absence of
> a showing of an abuse of discretion or of a refusal to exercise
> discretion, such a minimum sentence must be presumed to be
> the product of the trial judge's exercised discretion and will
> not be disturbed.

5. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—DISCRETION.

> Sentencing a defendant, convicted of unarmed robbery, to a
> minimum prison term of 14 years, 11 months, one month less
> than the statutory maximum, was not an abuse of discretion
> where defendant had a serious criminal history, which included
> convictions for felonious assault and armed robbery and the
> defendant was on parole for the latter conviction at the time
> that he committed the unarmed robbery.

### DISSENT BY LEVIN, J.

6. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—INDETERMI-
NATE SENTENCE ACT.

> *A minimum sentence which is one month less than the maximum
> sentence is not an indeterminate sentence (MCLA § 769.8).*

7. CRIMINAL LAW—SENTENCES—JUDICIAL POWER—SOURCE.

> *The source of a judge's sentencing power is legislation, not in-
> herent judicial power (Const 1963, art IV, § 45).*

8. CRIMINAL LAW—POWER TO IMPRISON—DIVISION OF POWER—COR-
RECTIONAL AUTHORITIES.

> *The power to confine lawbreakers is divided between the judiciary
> and the correctional authorities; the power of the two branches,
> both being derived from legislation, is equal in time and equal
> in right.*

9. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—IDENTICAL MAXIMUM SENTENCE.
   *A sentence where both the minimum and maximum are for the same term of years is not an indeterminate sentence.*

10. CRIMINAL LAW—INDETERMINATE SENTENCE ACT—PURPOSE.
    *The purpose of the indeterminate sentencing act is to render the sentencing judge's at-time-of-sentence view of the offender subject to reappraisal by the parole board some time short of service of the maximum term; that purpose is thwarted by a minimum sentence which closely approximates the maximum sentence (MCLA § 769.8).*

11. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—APPROXIMATING MAXIMUM SENTENCE—EFFECT.
    *A minimum sentence set so close to the maximum sentence that there is little or no difference between the minimum and maximum sentences undermines the function of the correctional authorities by preventing them from offering the convicted felon the prospect of release on parole before service of his maximum sentence as an inducement to his rehabilitation and also prevents supervision by the correctional authorities of his readjustment to society during his parole (MCLA § 769.8).*

12. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—INDETERMINATE SENTENCE ACT.
    *A minimum sentence which is one month short of the maximum sentence, not being an indeterminate sentence, exceeds the statutory limit; such a sentence exceeds the bounds of the constitutionally and statutorily permissible exercise of discretion (MCLA § 769.8).*

Appeal from Wayne, James N. Canham, J. Submitted Division 1 November 9, 1970, at Detroit. (Docket No. 8532.) Decided April 26, 1971. Leave to appeal applied for.

Bobby Joe Haggitt was convicted, on his plea of guilty, of robbery unarmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,*

Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: V. J. Brennan, P. J., and Levin and Peterson,* JJ.

Peterson, J.  During the November, 1970 session of Division 1, Panel III heard 3 cases in which the Court was asked to apply *People* v. *Lessard* (1970), 22 Mich App 342, *a fortiori,* to the situation in which a sentencing judge imposes a minimum sentence under the indeterminate sentence act[1] which is only one month less than the statutory maximum.  All involved crimes of violence.  All involved defendants with long records of criminal behavior including previous crimes of violence.  All involved defendants who were at liberty under correctional supervision, two on parole and one on probation.  And two of the three involved the typical plea bargain tolerated by our overcrowded courts under the sorry euphemism of docket convenience.

In *People* v. *Jordan* (1971), 33 Mich App 15, *ante,* an absconded probationer with a long record which included acts of violence, while awaiting disposition of pending charges of auto theft, possession of stolen motor vehicles, forgery, and probation violation, held up a used car lot and shot and killed the fleeing salesman.  Charged with first-degree murder, he was permitted to plead to the included offense of manslaughter and substantiated the plea by admissions factually establishing first-degree

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 769.8 (Stat Ann 1954 Rev § 28.1080).

felony murder. He was sentenced to a minimum term of 14 years, 11 months, the statutory maximum being 15 years.[2]

In *People* v. *Pollard* (1971), 33 Mich App 114, *post,* defendant was charged with assault with intent to murder and convicted by jury of felonious assault. The trial record discloses prior felony convictions and that defendant was on parole at the time of the offense. He was sentenced to a minimum term of 3 years, 11 months, the statutory maximum being 4 years.[3]

Here, Bobby Joe Haggitt, charged with armed robbery, was permitted to plead to the lesser offense of robbery unarmed. His narrative of the offense was sufficiently vague, unlike that shown on the record of *Jordan, supra,* that the court was spared the embarrassment of having an account of the larger offense spread on the record.[4] It appears that Haggitt has a serious criminal history which includes convictions for felonious assault and armed robbery, being on parole for the latter at the time of the present offense. As in *Jordan,* he was sentenced to a minimum term of 14 years, 11 months, the statutory maximum being 15 years.[5]

Michigan's indeterminate sentence act provides as follows:

"When any person shall hereafter be convicted for the first time of crime committed after this act takes effect, the punishment for which prescribed by law may be imprisonment in the state prison at Jackson, the Michigan reformatory at Ionia, the state

---

[2] MCLA § 750.321 (Stat Ann 1962 Rev § 28.553).

[3] MCLA § 750.82 (Stat Ann 1962 Rev § 28.277); MCLA § 750.503 (Stat Ann 1954 Rev § 28.771).

[4] In fact, Haggitt and the court not only avoided mention of a .38 special caliber revolver, but also any reference to facts showing the elements of robbery.

[5] MCLA § 750.350 (Stat Ann 1954 Rev § 28.582).

house of correction and branch of the state prison in the upper peninsula, the Detroit house of correction, or any other prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term except as hereinafter provided. The maximum penalty provided by law shall be the maximum sentence in all cases except as herein provided and shall be stated by the judge in passing sentence. He shall before or at the time of passing such sentence ascertain by examination of such convict on oath, or otherwise, and by such other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of such convict, which facts and such other facts as shall appear to be pertinent in the case, he shall cause to be entered upon the minutes of the court."

The following sections of Chapter IX of the Code of Criminal Procedure (PA 1927, No. 175, as amended, MCLA §§ 769.10, 769.11, and 769.12; Stat Ann 1954 Rev §§ 28.1082, 28.1083, and 28.1084) dealing with the sentencing of repeat offenders do not use the same language, but § 769.12 indicates the legislative intent by stating,

"Offenders sentenced under this and the last 2 preceding sections shall not be eligible to parole before the expiration of the minimum term fixed by the sentencing judge at the time of sentence without the written approval of the judge of such court or any judge of such court if the sentencing judge is not then serving. A person to be punishable under this and the last 2 preceding sections need not have been indicted and convicted as a previous offender in order to receive the increased punishment therein provided, but may be proceeded against as provided in the following section."

Countless decisions have upheld long sentences as against the claim that they constituted unconstitu-

tionally cruel or unusual punishment, or reflected an abuse of discretion by the trial judge. In *People* v. *Guillett* (1955), 342 Mich 1, such a claim was summarily rejected in one sentence:

"It is sufficient to say that the sentence was within the maximum provided by statute."

That is not to say that judicial discretion may not be abused as in *People* v. *Earegood* (1968), 12 Mich App 256, or *People* v. *Snow* (1970), 26 Mich App 510; or that it may be abdicated, as in *People* v. *Lessard, supra.* Defendant's reliance on *Lessard,* however, is misplaced for it was not the length of the minimum sentence *per se* that was dispositive, but the policy of the trial judge, stated on the record, of denying *any* effect to the indeterminate sentence act in *all* cases before him. The Court said, at page 350:

"* * * the action as it concerns the individual defendants constitutes reversible error in sentencing. The trial court failed to exercise discretion in setting the individual defendant's minimum sentences.

"In remanding for new sentence, we do not intend to dictate to the trial court what the minimum sentence should be nor will we attempt to determine what sort of sentence complies with the requirements for an indeterminate sentence. The trial court is required to impose sentence within his sound discretion in accord with his evaluation of the defendant as an individual."

If the Penal Code, setting the maximum penalty, and the indeterminate sentence act constituted the only legislative enactments affecting defendant, his argument that the long sentence defeats the rehabilitation purposes of the indeterminate sentence act would be more plausible. That is not the case, how-

ever. Thus, the Legislature has provided for the reduction of sentences by good time and special good-time allowances (MCLA §§ 800.33, 800.103 [Stat Ann 1954 Rev §§ 28.1403, 28.1514]) and provided that prisoners shall be eligible for parole consideration at the expiration of the minimum sentence reduced by his good time and special good-time allowances. MCLA § 791.233(b) [Stat Ann 1954 Rev § 28.2303(b)]. Thus, Haggitt may look forward to reducing his sentence by roughly four years by good behavior, still leaving a substantial period for post-release parole supervision. Even the serious offender, sentenced to life or a long term of years, excepting those convicted of first-degree murder, are eligible for parole consideration after ten years. MCLA § 791.234 (Stat Ann 1970 Cum Supp § 28-.2304). And the eligibility of repeat offenders for early parole with the consent of the sentencing judge or his successors, provided for under MCLA § 769-.12, quoted above, is equally available to those sentenced as first offenders by the proviso in MCLA § 791.233(b), *supra*.[6] Thus every prisoner knows that there is a fixed standard for reducing his time and moving up his parole eligibility, and that earlier release by special parole is also possible. The sentencing judge knows it also and must be presumed to take these factors into consideration in exercising his discretion.

It is argued that the indeterminate sentence act was intended by the Legislature to vest the parole board with a broad discretion and that a sentence

[6] Practical experience of trial judges in Michigan has established the utility, as a sentencing technique, of long shock-effect sentences in selectively appropriate cases, coupled with efforts to motivate the offender to work toward such an early parole. Early or "special" paroles are understandably most common in the longer sentence categories, and statistics of the Michigan Department of Corrections indicate that these special paroles are remarkably successful.

depriving the parole board of that power constitutes an abuse of judicial discretion. But it is obvious that every sentence except the shortest possible term limits the area of discretion of the parole board in point of time, and the longer the minimum sentence the greater the limitation. But, assuming a prisoner who is not totally intractable, and entirely apart from special parole procedures, there is never a point at which the parole board is completely deprived of room to exercise its discretion under Michigan statutes.

We are further of the opinion, in any event, that it was not the intent of the Legislature to create a power in the parole board co-equal to the judicial power to sentence. The maxim, *qui prior est tempore, potior est jure,* is as applicable to criminal as to civil law. The power to sentence, and the exercise of judicial discretion therein, are not only first in time but superior to the exercise by the parole board of its statutory duties. That the Legislature has not subordinated that judicial power by the present indeterminate sentence act is clear from *In re Southard* (1941), 298 Mich 75:

"Objection to the delegation of the power of the judiciary over sentences was met by the constitutional amendment of 1902 (Const 1850, art 4, § 47, as amended, and Const 1908, art 5, § 28). The amendment did not take away the inherent judicial power to exercise discretion in the imposition of sentences. That power always resided in the judiciary and there it must remain until curtailed or removed by the legislature. Examination of the penalties imposed for various crimes, as shown in the penal code (Act No 328, Pub Acts 1931 [Comp Laws Supp 1940, § 17115-1 *et seq.,* Stat Ann § 28.191 *et seq.*]), indicate legislative recognition and adherence to the policy of the exercise of discretion by

the sentencing judge within the maximum limits therein imposed. This discretion extends to the amount of fine and imprisonment up to the statutory maximum and to the alternative of fine or imprisonment.

"Blackstone comments on the inherent discretionary power of courts over amount of fines and length of imprisonment. See 2 Cooley's Blackstone (4th ed), book 4, Chap 29, p 1510 *et seq.*

"Prior to Act No 175, Pub Acts 1927 (code of criminal procedure), the minimum sentence for those imprisoned in the State prison, *et cetera,* was not less than six months in any case. Compare 3 Comp Laws 1915, § 15859, and 3 Comp Laws 1929, § 17336 (Stat Ann § 28.1080). The 1927 act permitted the trial judge to exercise his discretion in fixing the minimum term except in a case where this discretion was specifically denied. This enactment of a code of criminal procedure of necessity imposed a duty upon the sentencing judge to consider the limitations placed by the legislature upon penalties for specific crimes."

We reject the proposition that a minimum sentence approximating the statutory maximum is *per se* an abuse of judicial discretion. In the absence of fact showing an abuse of discretion, as in *Earegood* or *Snow, supra,* or a refusal to exercise discretion as in *Lessard,* such a sentence must be presumed to be the product of the trial judge's exercised discretion and will not be disturbed.[7]

Affirmed.

---

[7] If a third approach, that such a sentence is presumptively an abuse of discretion, were taken, the result here would be the same, there being a more than adequate showing that the trial judge did exercise his discretion by giving careful attention to many factors bearing upon the "needs of the particular case." *In re Southard, supra,* p 82. Such needs are not alone those of the defendant, but of the public as well. This approach is found in no cited authority and is inconsistent with traditional views of the discretion reposing in the sentencing judge.

V. J. BRENNAN, P. J., concurred.

LEVIN, J. (*dissenting*). I dissent because a sentence of 14 years and 11 months to 15 years—a minimum sentence 99% of the maximum—is not an indeterminate sentence.

I do not quarrel with my colleagues' thesis that Haggitt and the defendants in the companion cases,[1] all of whom were convicted of assaultive crimes, belong in jail. Nor is there any disagreement on my part with their strictures about plea bargaining; my thoughts about plea bargaining have already been set forth at considerable length.[2]

Nor is there any disagreement regarding the maximum term for which Haggitt and the other defendants should be jailed—the maximum term is established by law.

The question is whether a sentencing judge may fix a minimum sentence so close to the maximum that the parole board is prevented from releasing the offender on parole short of service of the maximum sentence provided by law. Our disagreement, then, does not center around the decision to incarcerate the offender—that decision has, indeed, been confided to the sentencing judge alone. At issue is the release decision—the harmonization of the judge's power to establish a minimum sentence and the parole board's power to release an offender on parole before the maximum term has been served.

The source of the sentencing power exercised by a sentencing judge is legislation, not inherent judicial power.[3] In *People* v. *Cummings* (1891), 88

---

[1] *People* v. *Jordan* (1971), 33 Mich App 15; *People* v. *Pollard* (1971), 33 Mich App 114.

[2] *People* v. *Byrd* (1968), 12 Mich App 186, 196 *et seq.* (LEVIN, J., concurring); *People* v. *Hollman* (1968), 12 Mich App 231, 236, *et seq.* (LEVIN, J., dissenting); *People* v. *Earegood* (1968), 12 Mich App 256, *reversed* in *People* v. *Earegood* (1970), 383 Mich 82.

[3] See *In re Callahan* (1957), 348 Mich 77, 80.

Mich 249, the Michigan Supreme Court declared unconstitutional an indeterminate sentencing law on several grounds, including that the act vested judicial power in the board of control of prisons established under the act.[4] To meet the constitutional objection, the Legislature submitted to the people, and the people by their vote adopted, an amendment to the 1850 Constitution authorizing the Legislature to provide by law for indeterminate sentencing.[5]

Now the ultimate source of the power to sentence is the mandate from the people and its implementing legislative expression. That mandate of the people and the subsequent legislative expressions divide the power to confine offenders between the judiciary and the correctional authorities. The power of both, derived as it is from the same source, is equal in time and equal in right. If the allocations of power and function are to be workable, they must be accommodated to each other; neither authority should be allowed to invade the function of the other, nor, in deference or respect for the other, abdicate its own responsibility.

Manifestly, a sentence where both the minimum and maximum are for the same term of years is not an indeterminate sentence. And the Michigan Supreme Court has so held. See *In re Cummins* (1904), 138 Mich 39, 40; similarly, see *People* v. *Westbrook* (1952), 411 Ill 301 (103 NE2d 494, 29 ALR2d 1341); *Sanders* v. *State* (1923), 19 Ala App 367 (97 So 294); *State* v. *Moore* (1952), 21 NJ Super 419 (91 A2d 342, 347); *In re Collins* (1915), 51 Mont 215 (152 P 40).

---

[4] See *In re Southard* (1941), 298 Mich 75, 79.

[5] "The legislature may, by law, provide for the indeterminate sentences, so-called, as a punishment for crime, on conviction thereof, and for the detention and release of persons imprisoned or detained on said sentences." Const 1850, art IV, § 47, added by PA 1901 JR No 11, ratified at the November election, 1901; reprinted in 1 MCLA 305 and 1 MSA 212.

This provision was continued without substantive change in Const 1908, art V, § 28, and Const 1963, art IV, § 45.

The policy and the spirit of the indeterminate sentencing law require more than a mere nod of literal or technical compliance on the part of the judiciary. A sentence of one month less than the maximum is but a nod, a gesture—more form than substance. It converts "the sharply drawn legislative distinction between definite and indeterminate sentences into an empty formula of words." *People* v. *Westbrook, supra,* p 303.

Courts in other jurisdictions faced with identical minimum and maximum sentences have expressed well the reasons why a determinate sentence—and the sentence here on appeal is substantially a determinate sentence—violates the concept of indeterminate sentencing.

"If such a sentence as here imposed were permitted, it would quite conceivably tend to thwart the legislative intendment of the parole system and *remove the prisoner from the supervision of the Parole Board during that time which [sic] he is released upon parole and under surveillance until the expiration of time equivalent to the maximum prison term.* In effect, it would shorten that period of supervision by the board in those cases where a prisoner is released by commutation of sentence and completely eliminate that supervision in cases where no commutation is earned and directs the prisoner's discharge at the expiration of the minimum term. Whatever powers of persuasion toward rehabilitation of the prisoner the board may have during the period of parole would be seriously reduced or entirely eliminated and the benefits thereof lost to the prisoner and to society. This, we feel, is contrary to the very nature and intent of the parole system and its design and purpose." (Emphasis supplied.) *State* v. *Moore, supra,* p 428.

"The conception of the Legislature, as indicated by the use of the term 'indeterminate,' was that *the*

*minimum and maximum terms fixed should be so adjusted as to allow a substantial period of time to intervene* during which the application for parole might be made, and the governor and board of prison commissioners might determine its merits by inquiry touching the conduct of the applicant, in order to ascertain whether or not he has exhibited a disposition to reform, and hence is entitled to invoke the discretionary power lodged in them. This being manifestly the end sought to be accomplished, it is mandatory upon the courts to enforce the statute in every case, according to its spirit. It is not to the purpose to say that the provision does not prohibit the fixing of the minimum and maximum so that both will expire on the same date, because they may, in the nature of things, approach each other until the difference disappears. This view is not in accord with the spirit of the provision, and would defeat effectually the purpose had in view by the Legislature." (Emphasis supplied.) *In re Collins, supra,* p 218.

The Michigan Supreme Court has expressed much the same view of our indeterminate sentencing law. In holding that a sentencing judge has no control over a statutorily-prescribed maximum sentence, the Court reasoned that otherwise "the trial judge, by prescribing a very low maximum, may totally deprive the governor, pardon board, and board of control of the opportunity to *exercise the discretion* which the statute intended to give them. If it does, then the trial judge, in cases where he can fix the minimum—as in larceny—may, *by increasing the minimum and reducing the maximum, make a determinate sentence, and thus frustrate the legislative purpose in enacting the indeterminate sentence law"*. (Emphasis supplied.) *In re Campbell* (1904), 138 Mich 597, 599.

The word "indeterminate" is rooted in the Constitution. The purpose of the people to override the judicial protectionism of judicial power (*People* v. *Cummings, supra*) and the implementation of that purpose by the enactment of the indeterminate sentencing law would be reduced to an ineffectual caricature if a sentence of 99% of the statutory maximum is held to be an indeterminate, rather than a determinate, sentence.

I have great confidence in the wisdom, compassion, and steadfastness of trial judges. Less than 9% of the sentences for serious felonies (statutory maximum sentences between 5 and 20 years) exceed 1/2 of the maximum and less than 6% exceed 2/3 of the maximum.[6]

But, however noble may be the purpose of the sentencing judge, it is clearly the legislative purpose, in implementation of the intent of the people, that the sentencing judge's at-time-of-sentence view of the offender be subject to reappraisal by the parole board some time short of service of the maximum term. That intention and purpose should not be thwarted by an overzealous exercise of the sentencing power which excludes the parole board from making such a reappraisal or which reserves to the judiciary a veto of the parole board's determination —a veto which is exercisable, as has been the sentencing power, unguided and unrestrained by any objectifiable criteria and which, under present practice, is unreviewable by any other man, tribunal, or court.

---

[6] The figures are based only on felonies not punishable by a mandatory life sentence (first-degree murder) or a sentence for "life or any term of years" (*e.g.*, second-degre murder, MCLA § 750.317 [Stat Ann 1954 Rev § 28.549]; rape MCLA § 750.520 [Stat Ann 1954 Rev § 28.788];; armed robbery, MCLA § 750.529 [Stat Ann 1954 Rev § 28.797]). The figures are for 1969 commitments from all courts and are taken from Table B 1a, Criminal Statistics, 1969, State of Michigan, Department of Corrections.

A minimum sentence set so close to the maximum that there is little or no difference between the minimum and the maximum sentences undermines the function of the correctional authorities by preventing them from offering the convicted felon the prospect of release on parole before service of his maximum sentence as an inducement to his rehabilitation and also prevents supervision by the correctional authorities of his readjustment to society during his parole.[7]

Since good time reduces the length of the sentence and counts against the discharge date, the period between the good-time release date and the last day of the statutory maximum term is not a period during which the offender is on parole subject to supervision by the correctional authorities.[8]

The correctional authorities have access to the same pre-sentence report that the judge sees before sentencing. Additionally, they have an opportunity to observe the convicted felon during a long period of confinement. They, too, are men of high purpose, training and experience, and they, too, are concerned with the needs of society. A judge is not justified

---

[7] "An indeterminate sentence law is not a new thing; men and women interested in sociology have for a long time endeavored to enact into law provisions that should be an incentive to lawbreakers, who have been convicted of crime, to reform and become good citizens." *In re Manaca* (1906), 146 Mich 697, 701.

"The design of the indeterminate sentence law is to reform criminals and to convert bad citizens into good citizens, and thus protect society. In order to accomplish this result, the theory is that, when the prisoner has shown by his conduct that he may turn from his criminal career, he should have an opportunity, under favorable circumstances, to make the test." *People* v. *Cook* (1907), 147 Mich 127, 132.

[8] Also, the statutory provisions (MCLA §§ 769.10–769.12 [Stat Ann 1954 Rev § 28.1082–§ 28.1084]), referred to by the majority, concerning the sentencing of habitual offenders, are not applicable unless the defendant is charged and convicted as a habitual offender. *In re Wall* (1951), 330 Mich 430, 434; *People* v. *Hatt* (1970), 384 Mich 302, 307, *et seq.* Neither Haggitt nor the defendants in the companion cases were so charged.

in prejudging the date of release to the point of depriving the correctional authorities of the power to release the convicted person short of service of his maximum sentence unless the sentencing judge or his successor in his sole and unreviewable discretion chooses to accept the parole board's decision that an earlier release on parole is desirable. It is against that view that I write, against the mortification of the indeterminate sentencing law resulting from the imposition of excessive "mortmain" minimum sentences.

The parole board might very well share the sentencing judge's view that a convicted person should remain in prison for the maximum statutory term less good time. The point, however, is that if the parole board disagrees with the sentencing judge it should be able to do something about it—to release him on parole some time short of the maximum sentence.

Although it is generally said that a trial judge's exercise of his sentencing discretion, if within statutory limits, is not reviewable, there are exceptions. Judicial discretion may, my colleagues and I agree, be abused, and it may be abdicated, *supra* (majority opinion, p 101).

It merely begs the question now presented to say that an exercise of "discretion" within "statutory limits" is not reviewable. If, as I am convinced, a sentence only one month short of the maximum is not an indeterminate sentence, then such a sentence exceeds the statutory limit—it exceeds the bounds of constitutionally and statutorily permissible exercise of discretion.

In other jurisdictions appellate courts "have for many years construed the power to 'reverse, affirm or modify,' a criminal judgment as including the power to review the merits of a sentence." See

American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, commentary accompanying § 1.1, pp 14, 15, listing, as among such States, Arkansas, Idaho, Oklahoma, New Jersey, and Wisconsin.

In an early case the Michigan Supreme Court asserted and exercised such a reviewing function and reduced a heavy sentence for "abuse of discretion." *People* v. *Murray* (1888), 72 Mich 10, 17.

It does seem anomalous that as to this and to no other aspect of the administration of justice, appellate courts shun their traditional role of providing relief from an abuse of discretion and correcting error. There is a clear trend of opinion in favor of appellate review of sentencing. See American Bar Association, *supra*.

In no case has the Michigan Supreme Court approved a sentence one month short of the statutory maximum. The declarations by the Court on reviewability of sentences are in cases distinguishable from this case.[9] In neither *Guillett* (see fn 9) nor any other case did the Court consider whether the sentence violated the spirit or policy of the indeterminate sentencing law. In this connection it is not without significance that from 1927 until the estab-

---

[9] In the case of *In re Leonard* (1904), 137 Mich 457, the Court merely held that a sentence of 10 to 15 years is "valid". In *People* v. *Dumas* (1910), 161 Mich 45, 50, the Court reviewed the circumstances and concluded that it did not appear that the sentence was unwise "much less does it appear shocking". Clearly, those statements are entirely consistent with a review for abuse of discretion. In *People* v. *Allen* (1941), 299 Mich 242, 249, the Court refused to review a sentence of 15 to 40 years. In *People* v. *Costanza* (1943), 306 Mich 415, 419, the Court refused to review a sentence of 4 to 20 years. In *People* v. *Connor* (1957), 348 Mich 456, 463, the Court refused to review a sentence of 8 to 15 years. In *People* v. *Krum* (1965), 374 Mich 356, the sentence was 30 days. In *People* v. *Guillett* (1955), 342 Mich 1, 9, the Court, in *dictum*, after reviewing the facts, said that a sentence of 7-1/2 to 10 years would not be reviewed.

lishment of our Court in 1965 a writ of error to review a criminal court conviction did not issue as a matter of course. Criminal convictions were reviewed only on leave granted by the Supreme Court or a justice of the Court.[10] Relatively few criminal convictions were reviewed, the Supreme Court being heavily burdened with its compulsory civil appeals jurisdiction.[11] Efforts to cast upon the Supreme Court this additional appellate burden as a matter of right of the convicted person were turned aside by the Supreme Court itself.[12] Plainly the Court had no time to discharge both its obligatory civil appellate responsibilities and, additionally, take on the review of sentences.

It is beyond the scope of this opinion to draw a precise line between an indeterminate and determinate sentence. The American Bar Association Project on Minimum Standards for Criminal Justice, in its report on Standards Relating to Sentencing Alternatives and Procedures, has declared:

"In order to preserve the principle of indeterminacy, the court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed." (Standard 3.2[c][iii], p 142.)

The commentary accompanying the standard states that (p 158), "this percentage is representative of the provision now in effect in many states".

Our Court does not enjoy superintending or supervisory control over the general practices of the trial courts as does the Supreme Court. We are

---

[10] PA 1907, No 175, part X, § 3; CL 1948, § 770.3.

[11] CL 1948, § 650.1 (Stat Ann § 27.2591).

[12] See *People* v. *Stanley* (1956), 344 Mich 530, holding unconstitutional PA 1954, No 53, which amended CL 1948, § 650.1 (Stat Ann § 27.2591) to grant an appeal as of right in a criminal case where the defendant's personal liberty was involved.

limited to reviewing for particular errors in actual cases and controversies.[13]   There is no need to draw a precise line in order to decide this case or the companion cases.   It is enough to say that a sentence of one month short of the maximum sentence is not an indeterminate sentence within the meaning of that term as used in the constitution or the governing statute.   It is for the Supreme Court to say where, if at all, the line shall be drawn.

[13] *Morcom* v. *Recorder's Court Judges* (1968), 15 Mich App 358, 360; *Wayne Circuit Judges* v. *Wayne County* (1969), 15 Mich App 713, 730.