People of the State of Illinois, Plaintiff-Appellee, v.
Central Hill, Jr., Defendant-Appellant.

## Gen. No. 49,629.

First District, First Division.

June 30, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Chester P. Majewski, Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Central Hill, Jr., was indicted for the crime of robbery, tried by the court, found guilty and sentenced to a term of five to eight years in the penitentiary. In urging reversal of his conviction, defendant contends (1) that the State failed to prove him

guilty beyond a reasonable doubt; and (2) that reasonable doubt in fact existed.

The precise issue posed is whether the State's evidence relating to the identification of defendant was sufficient to support his conviction. The complaining witness, Helen Tolick, testified that on August 25, 1963, at about 8:00 p. m., she was standing in front of the building where she resided, waiting for a "street car"; that she was facing a store window engaged in conversation with one John Powell who said he was waiting for a "bus"; that she had noticed a man sitting on a fire hydrant located about five feet from her and to her left.

She testified that the man who had been sitting on the hydrant leaped at her, grabbed her purse and knocked her down. She was unable to identify him; that as soon as she picked herself up she proceeded to a private alley just west of her apartment building and saw two men going through her purse; that a canine unit of the Chicago Police Department was passing the scene and immediately came to her assistance but no arrests were made at that time.

On cross-examination she testified it was dusk; that she was standing about 20 to 25 feet from the corner of 47th and Kimbark near the private alley, and that there were many people in the vicinity at the time.

Witness Marsha Green testified she was thirteen years of age, and at the time in question was walking with her girl friend on 47th Street; that she noticed Miss Tolick was facing the restaurant and that defendant was sitting on a fire hydrant; that she observed another man about five feet from the hydrant standing near the restaurant window; that the man near the window moved his hands; that defendant then snatched Miss Tolick's purse, and that both defendant and

18

the other man ran into a nearby alley. She placed herself about six feet from defendant and identified both Miss Tolick and defendant from the witness stand.

On cross-examination she said she wore glasses, but did not have them on at the time here involved. She repeated the substance of the testimony she had given on direct, adding that defendant had on "some brown suit pants and a kind of odd looking jersey" (short sleeved); that she was in the company of a girl friend of the same age whose name was either Bonnie or Ruby. She further testified that she did not know Miss Tolick but had seen her on 47th Street in the past; that it was dark when the robbery occurred; that she was engaged in conversation with her friend and saw defendant only for a moment; that she was not questioned at the scene by the police; that about 9:00 p. m., that evening the police came to her home and she supplied them with a description of defendant and the other man.

Approximately three weeks later two detectives took her and her mother to the Washington Park Police Station in order to identify a suspect. The detectives indicated that they wanted her to identify the man who knocked the lady down. There were two men in the lineup, defendant and John Powell. She did not know Powell. She was asked who was the one who had taken Miss Tolick's purse. Initially she told the police that the man was taller and lighter than either of the men; that a policeman then stated, "That is the man there," pointing to defendant, and she recalled replying, "Yes, that's him ain't it?" She remembered defendant saying, "What are you doing? I wasn't there, you can't identify me."

John Powell testified that on the evening of August 25 he was standing near the bus stop on the north side of 47th Street at Kimbark, to the left of and in

conversation with Miss Tolick; that she was facing the building; that he saw defendant snatch her purse; that defendant was his friend and he had known him as Junior for about four or five years; that he had seen him around the neighborhood; that after the occurrence Miss Tolick fell and he helped her up. While Powell admitted the incident took but a second or two, he had noticed defendant sitting on the fire hydrant, and identified him as the man who took the purse.

The police arrived from across the street before he "could get her up." There were seven or eight "guys" standing around the liquor store. About three weeks later Powell was picked up by the police, handcuffed and driven through the neighborhood in search of the man who had been involved in the taking of Miss Tolick's purse. He led the police to the home of defendant's mother where he said he had previously visited, and there the defendant was arrested.

Defendant testified that he could not recall his movements on the evening of August 25, since some time had passed since then and the date of trial, March 9, 1964. He stated that on the 19th of August he had a "half" cataract removed and had continued getting treatments at a clinic thereafter; that on August 25, 1963 he could not "see"; that at the police station after his arrest, Powell said to him that he told the police defendant had robbed "someone and knocked down some woman." Defendant stated he did not know what they were talking about; that he was then placed in a lineup with Powell; that a young girl was there and when she first saw him she said to the police, "That's not him. That ain't none of them there. A little taller"; that he then heard a policeman say to her, "Ain't this the one up there," pointing to the defendant; that she then pointed "there," indicating the defendant; that he told her "you know you ain't

20

never seen me before in your life. Why do you want to point me out?" Defendant denied taking Miss Tolick's purse; admitted knowing John Powell for some time and never had any disagreement with him; that Powell had been to the house the morning of the arrest.

At the close of all testimony and arguments of counsel, the court, on its own motion, recalled Miss Tolick and inquired if she knew Powell; if she saw him after her purse had been taken, and if he was the man who picked her up. She replied that she had never seen him prior to the occurrence and that he was the one who picked her up after the robbery.

The only issue presented is whether the State proved beyond a reasonable doubt that defendant was the person who committed the crime here involved.

Defendant argues that the complaining witness did not identify him; that Marsha, who wore glasses, was not wearing them at the time of the robbery, and testified that she saw the assailant for about a second; that in spite of the "psychological coercion" by the police she failed to identify defendant in the two-man lineup and did so only after a police officer pointed to him. This, defendant contends, leaves only the testimony of Powell to be considered. He argues that the friend he has known for years, and who took three weeks to lead the police, while handcuffed, to his mother's home where Powell had been many times before, is a liar and unworthy of belief.

The state urges that it did not rely upon the lineup to strengthen the identification of defendant by Marsha, but that the circumstances surrounding the lineup were brought out by defense counsel on cross-examination and that, as such, affected the weight and not the sufficiency of her testimony. The identification of defendant, the state contends, was corroborated by John Powell whose testimony was not im-

21

peached. In People v. Ulrich, 30 Ill2d 94, 195 NE2d 180 (1963), in discussing similar circumstances of lineup identification by a ten-year-old witness, the court on page 98, quoting from People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599, stated:

"There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person, [citations] and where an accused is not selected from a group, such fact does not render evidence of identification incompetent, but only affects its weight. [Citations.] Similarly, where claim is made that identification was induced by police suggestion that the guilty party is in custody, we have stated that such procedure does not completely destroy the evidence of identification, but affects only its weight and credibility."

The court, there, then held that the witness had identified the defendant at the police station and again at trial, and that her identification was corroborated by another witness who stated she saw the defendant at the scene, identified him at the station, and again at trial. The court concluded from the record that it appeared that the ten-year-old witness' testimony was not only clear and convincing but was corroborated and not shaken on cross-examination.

██ In the instant case Marsha's court identification of defendant was unequivocal. The trial judge believed her testimony and the independent corroborative identification of Powell, was sufficient to sustain defendant's conviction. As the trier of fact it was the function of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. The trial judge is in a better position to observe the witnesses while they testify,

and he was in a better position than a reviewing court to determine the questions involving such matters. Here, the guilt or innocence of defendant rested completely upon a determination of the weight and credibility to be accorded the testimony of the state's witnesses on the one hand and to defendant on the other. No more is involved.

 The fundamental principle established by the decisions of our Supreme Court, is that in a criminal case the reviewing court will not disturb the finding of the trial judge, particularly where the conviction depends so entirely on matters of credibility, unless the evidence is so palpably contrary to the finding or so unreasonable, improbable and unsatisfactory as to justify the reviewing court to entertain reasonable doubt as to defendant's guilt. People v. Kelley, 29 Ill2d 53, 193 NE2d 21 (1963); People v. Sustak, 15 Ill2d 115, 153 NE2d 849 (1958). In weighing the evidence the court is not required to disregard inferences that flow normally from the evidence before it (People v. Brown, 27 Ill2d 23, 187 NE2d 728 (1963)), and neither it nor the reviewing court is required to conjure up hypotheses from the evidence that are inconsistent with the defendant's guilt, and elevate these potential explanations to the status of a reasonable doubt. People v. Russell, 17 Ill2d 328, 161 NE2d 309 (1959).

 We do not find the proof insufficient to sustain the conviction nor so unsatisfactory as to justify this court in substituting our judgment for that of the trial court.

Finally, defendant contends that when the trial judge, after the close of all testimony and arguments of counsel, recalled Miss Tolick, he did not entertain "an unalterable or conclusive conviction of guilt"; that if at the time there was a reasonable doubt, the trial court should have acquitted defendant. Then, defendant argues, "Be that as it may, we can find no

23

logic to the court's conclusion of guilt from what the complainant, Miss Tolick, testified to on recall to the stand. The court simply asked her to verify the purely irrelevant fact that Johnny Powell helped her to her feet when she fell after the purse was snatched."

██ In the light with which defendant places it, we cannot see how this act could or did prejudice him, and we further hold that recalling Miss Tolick was not an admission by the court that he entertained a reasonable doubt as to defendant's guilt, at that time. It is within the sound discretion of the trial court whether a case may be reopened for further evidence and this discretion will not be interfered with except where clear abuse or prejudice to defendant is shown. People v. Franceschini, 20 Ill2d 126, 169 NE2d 244 (1960).

We find here no abuse of discretion in the action taken nor prejudice of which defendant may complain, and no inference from the action taken that the court was not conclusively convinced of defendant's guilt.

We are of the opinion that the proof sustains the finding and judgment of the trial court and its judgment is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.