THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARCHIE BUXTON, Defendant-Appellant.

(No. 73-28;

Fifth District—May 7, 1975.

430

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant States Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Archie Buxton, the defendant-appellant, was found guilty by a jury of the senseless and brutal murder of Louis Sheets, a 79-year-old man. The court sentenced him to a term of not less than 100 years nor more than 101 years in the penitentiary.

On appeal the defendant raises the following questions: 1) whether the trial court erred in denying the defendant's motion to suppress an oral statement given to police; 2) whether the State proved the defendant guilty beyond a reasonable doubt; 3) whether the court imposed an excessive sentence.

On New Year's Day, 1972, Louis Sheets was found dead in a cemetery in St. Clair County. The deceased had been brutally beaten. An autopsy revealed that Mr. Sheets, a man 5'6" in height and 140 pounds in weight, had been killed by multiple blows to the head and face. Three of the deceased's ribs had been fractured.

On January 23, 1972, at 3:50 A.M., police entered the defendant's home and arrested him and his wife. Defendant Archie Buxton, who was 25 years of age at the time of arrest, 6'2" tall, and who weighed 266 pounds, was taken with his wife to the East St. Louis Police Station. The defendant asked the police if they planned to hold his wife, who was pregnant, and was told by Detective Lawrence Brewer that the initial investigation showed her to be implicated. Detective Brewer explained to the defendant that his wife could be released if upon further investigation she was found to be not involved. The defendant stated that he was told that if he did not sign a statement regarding Mr. Sheets' death, his wife would be held.

Six witnesses testified for the State at the trial, four of whom implicated the defendant in the death of Louis Sheets.

Spencer Lowery testified that he was at Franklin's house with Franklin and Quintella Hall, his host's girlfriend, when the accused and his wife drove up in a 1958 Ford. In an earlier statement to the police, however, Lowery had stated that he was at Franklin's house when Willie Franklin and the defendant arrived together in the 1958 Ford with Louis Sheets in the trunk. Lowery further testified that Willie Franklin, the defendant, and he drove to a cemetery where Buxton took the struggling victim from the trunk and beat him with a hammer. After the beating the defendant

returned to the car with blood on his coat and pants and threw the hammer into the back seat of the car. The three drove off leaving the victim lying in the cemetery. On the way to the cemetery, the defendant had given Franklin and Lowery the following reason why he was going to kill the deceased: "Well, he [the defendant] had a cut on this hand; he was looking at this cut; that is when he said he ought to kill him."

Willie Franklin testified that Lowery and he were at his house when defendant Archie Buxton drove up with his wife. Franklin stated that Lowery, Buxton and he went to get some liquor. He explained that they went to a cemetery where the defendant opened the trunk, took a man out, and beat him. The man moaned. Franklin saw the defendant standing with a hammer in his hand near where he thought the man's body lay. According to Franklin, the defendant returned to the car after the beating and then threw the hammer in the trunk. The witness corroborated Spencer Lowery's testimony that the defendant had stated he was going to kill Mr. Sheets because Sheets had cut his hand.

Franklin gave two statements to Detective Brewer, a written one on January 23, 1972, and an oral one the following day. The written statement was substantially the same as his in-court testimony. According to Detective Brewer's report of the oral statement, however, Franklin stated that he was with the defendant when Sheets was abducted.

Quintella Hall attempted to corroborate the testimony of Franklin and Lowery in her direct testimony. On cross-examination, however, she acknowledged that she had given contradictory statements to the police and subsequently told a confusing story about her as well as Franklin's involvement in Sheets' abduction. Notwithstanding this confusing testimony, Quintella clearly stated that the defendant brought a hammer to her house and that she later gave the hammer to Officer Brewer.

The victim's brother-in-law, Melvin Geiger, also testified at the trial. After learning that Louis Sheets had mysteriously disappeared, Geiger and William Shannon, Mrs. Sheets' brother, searched for Mr. Sheets. They observed and followed Mr. Sheets' car to the vicinity of 16th and St. Clair, where it turned in a driveway and parked behind a house. Mr. Geiger testified that he observed three black men in the car. He described the driver as a big, broad-shouldered, fat man. Geiger had been within three car lengths of Sheets' car.

Geiger and Shannon then returned to the Sheets' home where they verified the license number of the car they had followed. They called the police, and returned to the place where they had seen the car parked. The car was no longer there.

Detective Charles Airhart, an investigator for the St. Clair County Sheriff's Department, testified that upon receiving information that the

victim's car had been followed to 16th and St. Clair, he proceeded there and searched the area. He found a black billfold which later was identified by the victim's wife as belonging to Mr. Sheets.

The State's sixth and final witness, Dr. Clifford C. Kane, performed an autopsy of the deceased.

The defendant did not testify at the trial, but made two statements to the police. The first was written and signed by him but according to his testimony at the hearing on the motion to suppress, he did not read it before signing. This statement was made at approximately 5 in the morning of January 23, following his arrest about an hour earlier. The second, the substance of which is included in Detective Brewer's police report, was oral and made the following day. Detective Brewer testified at trial regarding the contents of the oral statement. Both statements were the subject of a motion to suppress which was denied by the trial court.

Detective Brewer testified that the defendant gave a written confession in which he stated that Willie Franklin, Spencer Lowery, and he abducted the deceased, beat him, and dumped him at a cemetery. Brewer stated that the accused gave another statement the day following his written confession. In this statement the defendant explained that he had used a ball-peen hammer on the victim and that he did not want to implicate the other abductors. Detective Brewer testified that he did not reduce the second statement to writing for the following reason: "* * * I felt it would be in conflict to introduce another statement—second statement—which would have been a later statement, so rather than to take another written statement from him, I decided I would enter it as an investigative factor and testify to it."

The defendant contends that the trial court erred in denying his motion to suppress his oral statement to the police. He argues that because the first written statement was involuntary, the second oral statement was therefore tainted and thus inadmissible. The defendant does not argue that the second statement was independently tainted.

The State answers with alternative contentions. It first contends that the written statement was voluntarily and understandingly made. Conceding, *arguendo*, that the written statement was involuntary, the State next contends that the second statement was not a product of the first. In particular, it submits that any taint arising from the first confession was dissipated before the defendant orally gave the second inculpatory statement.

■■ Whether the specific language amounts to a threat or promise that renders a confession involuntary depends upon the circumstances in which the language was used. (*People v. Higgins*, 50 Ill.2d 221, 278 N.E.

2d 68; *People v. Jackson*, 41 Ill.2d 102, 242 N.E.2d 160.) During the proceedings on the motion to suppress in the instant case, the defendant's testimony, insofar as relevant to the question here, follows:

"Q. Tell the court why you signed [the statement] when [Brewer] asked you to sign it?

A. Well, at the present time I was too nervous and anything, and the police Brewer told me if I didn't sign it he was going to keep my wife there, because he said she was in it, and I know she wasn't; at the time my wife was pregnant and shoved around by the East St. Louis Police my wife—she was three months pregnant during the time; that was the only reason I signed the statement."

On cross-examination, the following colloquy occurred between the State's attorney and the defendant:

"Q. Before you signed it, what threats were made to you?

A. He told me that he was going to keep my wife there until I said I did it."

Detective Brewer's testimony is contrary to that of the defendant. Brewer testified that no threats or promises were made to the defendant to obtain the statement. When asked if he had offered any promises to defendant with regard to Mrs. Buxton, Detective Brewer replied:

"A. No, there was some conversation as to his wife; he asked me, would we hold his wife; I told him like this—this was a fact—that my initial investigation had shown her to be implicated in some way, which was why she was there. I further told him that if during the course of the investigation I could ascertain that she had no connection with it, she would be released; that is what happened."

■■ The trial judge stands in the best position to determine whether or not a confession is voluntary, as he can weight credibility better than a reviewing court. His determination of this issue cannot be set aside unless it is against the manifest weight of the evidence. (*People v. McGuire*, 39 Ill.2d 244, 234 N.E.2d 772.) In deciding the voluntariness of a confession, the trial court is not required to be convinced beyond a reasonable doubt. (*People v. Spencer*, 27 Ill.2d 320, 189 N.E.2d 270; *People v. Sims*, 21 Ill.2d 425, 173 N.E.2d 494.) That the trial judge in the instant case believed the testimony of Detective Brewer instead of the defendant provides no basis for reversal. Officer Brewer's remarks to the defendant concerning Mrs. Buxton's release were simply statements of his duty as a police investigator pursuant to section 107—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—6). The record shows that defendant's wife was released at 6:30 A.M. on January 23 and that

defendant testified he knew of her release prior to his giving the oral statement to Detective Brewer on January 24. For these reasons, we conclude that the trial court's finding of voluntariness of the defendant's written confession was not against the manifest weight of the evidence. Having determined that the defendant's written confession was voluntary, we find that his subsequent oral confession was also voluntarily and understandingly given. Accordingly we hold that the circuit court did not err in denying the defendant's motion to suppress his confessions.

The defendant next contends that the evidence was insufficient to prove him guilty of murder beyond a reasonable doubt. He claims that he was framed.

■■■ A reviewing court will not disturb a guilty verdict on grounds of insufficient evidence unless it is so unsatisfactory, improbable or unreasonable and so palpably contrary to the evidence as to justify the court in entertaining a reasonable doubt of the defendant's guilt. (*People v. Rogers,* 132 Ill.App.2d 501, 270 N.E.2d 186; *People v. Hill,* 61 Ill.App.2d 16, 208 N.E.2d 874.) Where the evidence is contradictory, it is the province of the jury to determine the credibility of witnesses and the weight to be given their testimony. (*People v. Zuniga,* 53 Ill.2d 550, 293 N.E.2d 595.) Here, the defendant's confessions and the testimony of Detective Brewer and Spencer Lowery provided evidence that the defendant murdered Louis Sheets. Notwithstanding some inconsistent testimony given by Willie Franklin and Quintella Hall, we are of the opinion that there existed sufficient evidence to support the jury's verdict that the defendant was guilty as charged beyond a reasonable doubt.

Although the defendant has attempted to show that the testimony of Spencer Lowery was not credible, it is unrefuted that the evidence adduced at trial shows that Lowery, then age 20 and an eyewitness to the killing, had nothing to do with Louis Sheets' abduction before the killing. Lowery's involvement in this incident began at Willie Franklin's house at approximately 6:30 to 7:30 P.M. on January 1, 1972. Despite testimony of other witnesses that the defendant, and perhaps Willie Franklin, had earlier abducted the victim on the streets of East St. Louis, no witness testified that Lowery was present during the abduction or at the time the defendant exercised control over the deceased's car.

Willie Franklin, the State's second witness, gave testimony concerning events of the cemetery that corroborated the testimony of Spencer Lowery. Both testified that the defendant beat Louis Sheets with a hammer. A review of the record discloses only one inconsistency in the account of events at the cemetery. Lowery testified that when the defendant returned to the car, he threw the hammer in the back seat. Franklin testified that the accused threw it in the trunk.

The State's third witness, Franklin's girlfriend, Quintella Hall, gave conflicting testimony about events surrounding the abduction of the deceased. Her testimony, however, is not inconsistent with Franklin's and Lowery's account of the beating at the cemetery.

The defendant contends that witnesses Lowery, Franklin and Hall gave inconsistent testimony. This is true. He advances the theory that the witnesses had motives to bias their testimony. That is perhaps also true. Defendant further claims that the defendant was framed by Willie Franklin and his girlfriend. This theory was argued to the jury by defense counsel in opening argument. In support of this theory, the defendant argues that Franklin and his girlfriend moved the victim's car from where it had been left the night before to in front of defendant's house in an attempt to shift the blame to the defendant. The defendant also stresses the fact that the murder weapon was found by Detective Brewer at Willie Franklin's house. This fact, however, can cut both ways. If Franklin is to be accused of framing the defendant by moving the victim's stolen car to the defendant's house a day after the killing to shift the blame to the defendant, the hammer would likely have been moved to the car or to the defendant's house sometime between January 2 and January 21 when Franklin was arrested. For this as well as other reasons, we conclude that the record does not support the theory that Willie Franklin and Quintella Hall framed the defendant. The evidence shows that the defendant, a large and powerful man, overwhelmed a small, old man, beat him, and then abducted him by stuffing him in the trunk of a car. Later the defendant drove to someone's house, reflected on his acts, and took off to a remote area with others at night to finish the job by beating the defenseless old man to death with a hammer. We therefore sustain the jury's verdict that the defendant was guilty of murder beyond a reasonable doubt.

Finally, the defendant claims that his sentence was excessive and not in accord with the principles of indeterminacy. The State agrees that the minimum sentence should be reduced to comport with principles of indeterminacy.

■■ The Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(1)), provides that, "for murder, the minimum term shall be 14 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." The instant murder was particularly brutal and senseless. A minimum sentence of 100 years would thus not ordinarily be excessive. In *People v. Lipscomb*, 19 Ill.App.3d 114, 311 N.E.2d 257, for example, the court affirmed a sentence of 100 to 150 years for a murder no more brutal than this one.

But in view of such cases as *People v. Jennings*, 11 Ill.App.3d 132, 296 N.E.2d 19; *Abernathy v. People*, 123 Ill.App.2d 263, 259 N.E.2d 363, however, we find that the sentence in the present case does not comport with principles of indeterminacy. "A true indeterminate sentence is one with a sufficient difference between the minimum and maximum limit which will allow the prisoner an opportunity for parole." (*People v. Jacque*, 131 Ill.App.2d 365, 366, 266 N.E.2d 514.) Consequently, we reduce the defendant's minimum sentence to 33 years.

For the foregoing reasons, we affirm the judgment entered against the defendant by the circuit court of St. Clair County on the jury's verdict of guilty and reduce the defendant's minimum sentence to 33 years.

Affirmed as modified.

EBERSPACHER and CARTER, JJ., concur.