STATE OF NEBRASKA, APPELLEE, V. HAROLD L. WILSON,
APPELLANT.

546 N.W.2d 323

Filed April 2, 1996.　No. A–95–288.

Thomas L. Spinar, Saline County Public Defender, for appellant.

Don Stenberg, Attorney General, and David K. Arterburn for appellee.

SIEVERS, Chief Judge, and MUES and INBODY, Judges.

INBODY, Judge.

## I. INTRODUCTION

This appeal arises from Harold L. Wilson's convictions of attempted second degree murder, robbery, and use of a weapon to commit a felony. On appeal, Wilson contends that the district court erred in admitting evidence of a subsequent crime under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 1994); that there was insufficient evidence to support his conviction for attempted second degree murder; and that the sentences imposed upon him are excessive. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On September 6, 1994, an information was filed charging Wilson with attempted second degree murder, robbery, first degree assault, and use of a weapon to commit a felony resulting from an attack on a convenience store worker on May 8, 1994, in Crete, Nebraska. At his arraignment, Wilson pled not guilty to all counts. Prior to trial, the State filed a notice of intent to offer evidence of other wrongs or acts during Wilson's trial, and a § 27-404 hearing was held to determine the admissibility of the evidence sought to be introduced by the State.

### 1. § 27-404 HEARING

On November 3, 1994, a § 27-404 hearing was held to determine, among other things, the admissibility of testimony from Kimberly Paulsen regarding an incident similar to the charged incident which had occurred in Lincoln, Nebraska, on May 9, 1994. Evidence was received including a transcript of testimony by Paulsen, while under oath, as to the circumstances surrounding an attack upon her by Wilson while she was working at a Little King fast-food restaurant in Lincoln. The court determined that the testimony of Paulsen could be introduced by the State on direct examination to show proof of intent, plan or method of attack, identity, and absence of mistake or accident, and further details concerning the Lincoln incident will be set forth later in this opinion. The court denied the remainder of the State's motion concerning admission of other evidence.

### 2. TRIAL

A jury trial was held on November 28 and 29, 1994. At trial, the victim, Peggy Kenney, testified that on May 8, 1994, she was employed at a Crete convenience store named "First & Last Stop." Kenney worked the morning shift, opening the store at 6 o'clock. On May 8, Kenney arrived at the store at approximately 5:50 a.m. and was working alone when Wilson, who was the store's first customer, entered the store at approximately 6:15. Kenney recognized Wilson because she had seen him in the store before and had noticed Wilson's eyes as a distinguishing feature.

Kenney testified that after Wilson entered the store, he walked around the store for a few minutes looking at various items. During this time, Kenney continued working behind the counter, performing various tasks, including placing money in the cash register drawer. Shortly thereafter, Kenney asked if she could help Wilson, to which Wilson responded that he did not know what he wanted. During this brief conversation, Kenney testified, Wilson acted friendly toward her and showed no sign of anger, of abnormal behavior, or that he was upset.

Shortly thereafter, Wilson walked up to a snack food display, picked up a bag of Doritos chips, and placed the bag on the counter. At this point, Wilson was only 2 feet away from Kenney. Kenney informed Wilson how much the chips would cost, and Wilson said that he had to go out to his car to get his wallet. When Wilson returned 20 to 30 seconds later, he was walking very quickly. Wilson approached Kenney, grabbed her hair with his right hand, pulled her head down behind the counter, and stabbed her neck 6 to 10 times with an object that he was holding in his left hand. Kenney testified that Wilson stabbed her with a long, cylindrical, metallic object which she thought might be an ice pick or a screwdriver.

During the attack, Wilson did not say anything to Kenney and did not demand money. After Kenney attempted to pull away from the attack, but was unable to do so, she told Wilson to take the money in the cash register. At this time, Wilson let go of Kenney's hair; grabbed $175 in bills out of the open cash register drawer, which was within easy reach; and ran out of the store.

Kenney then ran to a house across the street, where a call was made to police, and Kenney was taken to the emergency room at the Crete hospital. David Marvin, a physician's assistant, testified that there were several stab wounds to Kenney's neck. This caused Marvin concern because one particular stab wound was in the area of the carotid artery and the internal jugular vein. Both Marvin and Dr. Leon Jons, who saw the victim for followup care, testified that given the nature of Kenney's injuries, she had been placed in a situation involving a substantial risk of death, permanent disfigurement, or injury.

The State then adduced evidence from Paulsen, regarding a similar incident that occurred to her while she was working at a restaurant in Lincoln, over Wilson's continuing objection as to relevance and on the basis of the § 27-404 hearing. Paulsen testified that on May 9, 1994, she was working a 5 to 10:30 p.m. shift at a Little King restaurant, located at 27th and Dudley Streets. At approximately 8:15 p.m., Wilson entered the Little King store where she was working and asked to use a telephone book. After exiting and reentering the store several times over a half-hour period, Wilson ordered a sandwich from Paulsen. Paulsen testified that she did not notice anything unusual about Wilson's behavior and that he was friendly to her and did not appear to be angry or upset.

However, as Paulsen reached down to get some Parmesan cheese for Wilson's sandwich out of a refrigerator that was located underneath the counter, Wilson grabbed her from behind and started cutting her neck with a knife. Paulsen could tell that Wilson was holding the knife in his left hand and estimated that she felt the cutting motion on her neck approximately 10 to 15 times. After Wilson cut her neck, he stabbed her in the back with the knife three or four times, then started to stab her in her front chest area. After stabbing Paulsen approximately four times in her front chest area, Wilson stopped abruptly and ran out the door. Wilson did not say anything while he was attacking her, did not demand money, and made no attempt to steal any money or items from the store.

Corroborating testimony was adduced from Wilson's fiance, Laura Leigh, who testified that Wilson is left handed. Leigh also testified that Wilson was driving a red four-door Ford Tempo when she last saw him early in May 1994 and that Wilson took a screwdriver with him when he left. Additionally, Leigh testified that on more than one occasion, the most recent being in early May, Wilson told her that "you know, Laura, I told you time before and time again and I always wanted to know how it was like to kill someone."

On May 10, 1994, during an execution of a search warrant on Wilson's room at a Lincoln Holiday Inn, Lincoln police officers found a Phillips-head screwdriver. However, the screwdriver recovered was a different one than the screwdriver

that was given to Wilson by Leigh. Additionally, no blood was detected on the seized screwdriver.

Wilson took the stand in his own defense, testifying that he was not involved in either the Crete or the Lincoln incident. Wilson testified that on May 8, 1994, at the time of the attack and robbery in Crete, he was in Lincoln. He stated that on May 8, he had stayed at a Lincoln Holiday Inn located on Cornhusker Highway and that he woke up at approximately 6 a.m. Wilson stated that he left the Holiday Inn at approximately 6:30 a.m. and drove to the Highway Diner, located on Highway 2 in Lincoln, to eat breakfast. Wilson testified that he remained at the Highway Diner until approximately 7:30 a.m. However, the State presented rebuttal evidence by Gary Walker, owner of the Highway Diner, and Tami Hill, a waitress at the diner, that they were present at the Highway Diner on the morning of May 8 between 6 and 7:30 a.m. and that they did not observe Wilson to be present and had never seen Wilson prior to the trial.

Wilson further testified regarding the May 9, 1994, Lincoln incident. Wilson admitted that he went to the Little King restaurant at 27th and Dudley Streets on May 9 at approximately 8 p.m., but claimed that he left the restaurant between 8:50 and 9 p.m. and was not in the restaurant during the attack on Paulsen. Wilson testified that after ordering a second sandwich, he left to make a telephone call, and that upon returning, he ran into an individual leaving the store carrying a knife. At that point, Wilson claims, he also decided to run off.

Finally, Wilson testified that he was driving a maroon, not a red, vehicle; that he uses his left hand only for writing; and that his statements to Leigh about what it would be like to kill someone referred simply to fighting.

To corroborate Wilson's alibi defense, Wilson called Emma Yost, who testified that on May 8, 1994, at shortly after 6 a.m. she and her husband left for work from their home, which is only about one-half block away from First & Last Stop. On the drive to work, they met a blue or dark-gray car being driven by a clean-cut black man.

On November 29, 1994, the jury found Wilson guilty of attempted second degree murder, robbery, and use of a weapon to commit a felony. On March 6, 1995, Wilson was sentenced

to a term of imprisonment of not less than 40 nor more than 40 years for the attempted second degree murder conviction, not less than 2 nor more than 2 years on the robbery conviction, and not less than 20 nor more than 20 years on the use of a weapon to commit a felony conviction. Wilson then filed a timely appeal to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Wilson contends that (1) the district court erred in admitting evidence of a subsequent crime under § 27-404(2), (2) the evidence was insufficient to support his conviction for attempted second degree murder, and (3) the sentences imposed upon him were excessive.

## IV. ANALYSIS

Before beginning our analysis of Wilson's assignments of error, we note that one of Wilson's convictions was for attempted second degree murder. We are cognizant of the recent Nebraska Supreme Court rulings holding that malice is an element of second degree murder and have examined the record to determine whether the jury instructions and the information charging Wilson contained malice as an element of the attempted second degree murder charge. Our review of the record reveals that malice was included in both the information charging Wilson, as required by *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), and the jury instructions, as required by *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994). Therefore, we need not address this issue further, and proceed to consider Wilson's assignments of error.

### 1. ADMISSION OF EVIDENCE

Wilson's first assignment of error is that the district court abused its discretion in permitting the State to adduce evidence of a similar act, i.e., the May 9, 1994, attack on Paulsen at a Little King restaurant in Lincoln. Wilson contends that the evidence was not admissible under § 27-404(2).

Section 27-404(2) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. However, such evidence may be admissible for other

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

■ It is within the trial court's discretion to determine the admissibility of evidence of a defendant's other wrongs or acts, and the trial court's decision will not be reversed on appeal absent an abuse of discretion. *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994); *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993); *State v. Rosales*, 3 Neb. App. 26, 521 N.W.2d 385 (1994). "Judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition." *State v. Williams*, 247 Neb. 878, 884, 530 N.W.2d 904, 909 (1995). Accord *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994).

■ When reviewing the admission of evidence of other acts, an appellate court considers (1) whether the evidence was relevant; (2) whether the evidence had a proper purpose; (3) whether the probative value of the evidence outweighed its potential for unfair prejudice as required by Neb. Evid. R. 403, Neb. Rev. Stat. § 27–403 (Reissue 1989); and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *Wood, supra; State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992); *Rosales, supra.*

### (a) Relevance

■ With regard to the relevance of "other acts" evidence, Neb. Evid. R. 401, Neb. Rev. Stat. § 27–401 (Reissue 1989), states that "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." " 'To be relevant, evidence must be rationally related to the issue by a likelihood, not a mere possibility, of proving or disproving the issue to be decided.' " *Rosales*, 3 Neb. App. at 38, 521 N.W.2d at 393 (quoting *Wood, supra*).

In the instant case, the "other acts" evidence consisted of a similar act of cutting a Lincoln restaurant worker's neck and

occurred only 1 day after the date of the offense for which Wilson was on trial. Further, the similarities between the Lincoln incident and the Crete incident are numerous. The sites of both attacks were fast–service establishments. The victims in both attacks were women. The attacks on both victims were unprovoked and occurred when the women were alone with Wilson inside the stores. Both victims individually and unconditionally identified Wilson as their attacker. In both incidents, Wilson spent time in the stores prior to the attacks and talked to the victims normally, pleasantly, and without anger or other unusual behavior being noted by the victims. Also, in both incidents Wilson briefly left the stores before returning to attack the victims. Wilson grabbed both victims with his right hand and stabbed and cut the victims' necks with an object held in his left hand. Further, Wilson did not speak during either of the attacks. Because of the similarities in circumstances and the closeness in time between the two incidents, the Lincoln incident was clearly relevant to the charged offense, which had occurred in Crete.

### (b) Proper Purpose

The "other acts" evidence was also admitted for a proper purpose, that is, to show identity, plan, and intent. Wilson presented evidence at trial indicating that he was not the perpetrator of either the Lincoln or the Crete attack. Therefore, there was an issue of identity, and the State could properly introduce evidence tending to establish that Wilson was in fact the perpetrator of the crimes. Furthermore, the fact that no money was requested in the Lincoln incident served to prove that Wilson's plan and intent was not to commit a robbery in Crete, but instead to fulfill his desire to find out what it would be like to kill someone. Consequently, the evidence concerning the Lincoln incident was admitted for the proper purpose of establishing identity, plan, and intent.

### (c) Probative Value

Even when "other acts" evidence is relevant and has a proper purpose, it is still subject to overriding protection under § 27–403, which permits relevant evidence to be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. § 27–403; *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Therefore, we proceed to consider whether evidence of the Lincoln incident should have been excluded because of unfair prejudice to Wilson or because of any of the other factors listed in § 27–403.

 "[E]vidence of other crimes may be admitted in a criminal prosecution where the evidence is so related in time, place, and circumstances to the offense or offenses charged as to have·substantial probative value in determining the guilt of the accused." *State v. Scott*, 211 Neb. 237, 241, 318 N.W.2d 94, 97 (1982). Accord *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986) (defendant's prior act of choking his ex-wife 10 years earlier was properly admitted in trial for offense of choking present wife to death). A separate act or acts with distinctive patterns or procedures may have probative value in determining a defendant's guilt, *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989), and need not be identical to the act charged in order to be admissible, *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981).

 " ' "Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case." ' " *Messersmith*, 238 Neb. at 931, 473 N.W.2d at 907 (quoting *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986), quoting Andrew K. Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 S. Cal. L. Rev. 220 (1976)). Accord *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990).

In the instant case, the closeness in time and the similarities between the Lincoln and the Crete incidents make the Lincoln incident probative in determining Wilson's guilt of the charged offense. Furthermore, the admission of the "other acts" evidence did not result in unfair prejudice to Wilson, or stated another way, the evidence did not have an undue tendency to suggest a decision on an improper basis. See, *Messersmith,*

*supra*; *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991). Likewise, admission of evidence concerning the Lincoln incident did not offend any of the other factors listed in § 27-403. Thus, the evidence of the similar Lincoln incident was probative and was not outweighed by the potential for unfair prejudice.

### (d) Jury Instructions

The fourth prong of the test to determine admissibility of "other acts" evidence is satisfied because the court instructed the jury that it was to consider the evidence regarding the similar acts for the limited purposes of determining intent, plan, method of attack, identity, and absence of mistake or accident.

In sum, we find that the evidence concerning the Lincoln incident was relevant, admitted for a proper purpose, probative, and did not result in unfair prejudice, and the jury was properly instructed on the limited purposes for which it was to use the evidence. Therefore, we find no abuse of discretion in admitting the evidence of the similar Lincoln incident, and we find no merit in Wilson's first assignment of error.

### 2. SUFFICIENCY OF EVIDENCE

Wilson's second assignment of error is that the evidence was insufficient to sustain his conviction of attempted second degree murder. In reviewing Wilson's assignment of error, we are mindful of the well-settled rule that a defendant's conviction must be sustained if, taking the view of the evidence which is most favorable to the State, there is sufficient evidence to support it. See *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990). Stated another way, "[a] conviction will not be reversed on appeal unless, after the court views the evidence most favorably for the State . . . the evidence is so lacking in probative value that it is insufficient as a matter of law to support [the] verdict." *State v. Cortes*, 236 Neb. 257, 258, 460 N.W.2d 659, 660 (1990).

To be guilty of attempted second degree murder as he was charged, Wilson must have engaged in conduct which, under the circumstances as Wilson believed them to be, constituted a substantial step in a course of conduct intended to cause the death of a person intentionally and maliciously, but without

premeditation. See, Neb. Rev. Stat. §§ 28–201 (criminal attempt statute) and 28–304 (second degree murder statute) (Reissue 1989); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994).

The evidence included testimony by Kenney, the victim, identifying Wilson as the person who had attacked her by stabbing her neck with a long, cylindrical, metallic object which he had held in his left hand. Wilson's fiance, Leigh, testified that Wilson was left handed and had taken a screwdriver with him. Dr. Jons and Marvin, the physician's assistant who treated Kenney, both testified that Kenney had been placed in a situation involving a substantial risk of death, permanent disfigurement, or injury.

■■■ The evidence, viewed most favorably to the State, also indicated that murder, not robbery, was Wilson's motive for the attack. Leigh testified that Wilson had repeatedly said that he wondered what it would be like to kill someone, and Wilson admitted making these statements. Additionally, Wilson's actions indicate that robbery was not his motive. Wilson did not demand money from the Crete victim, and even though the cash register drawer was open and within easy reach, he did not attempt to take any money until after being told to do so by the victim. Further, during the Lincoln incident, Wilson did not make any monetary demands, nor did he take anything from the Little King store. Although Wilson's own testimony is contradictory, in determining the sufficiency of the evidence to sustain a conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. See *Zitterkopf, supra*. Clearly, when the evidence is viewed in the light most favorable to the State, there was sufficient evidence to support the jury's finding that Wilson intended to cause the death of Kenney intentionally and maliciously, but without premeditation. Therefore, Wilson's contention that there was insufficient evidence to support his conviction for attempted second degree murder is without merit.

### 3. Excessive Sentences

Wilson's third assignment of error is that the sentences imposed upon him were excessive. Wilson was sentenced to

consecutive terms of imprisonment of not less than 40 nor more than 40 years on the attempted second degree murder conviction, not less than 2 nor more than 2 years on the robbery conviction, and not less than 20 nor more than 20 years on the use of a weapon to commit a felony conviction. By fixing minimum and maximum terms, the court's sentences appear to be of an indeterminate nature while, at the same time, in reality sentencing Wilson to definite terms of years.

The Nebraska indeterminate sentencing statute provides, in relevant part, that a court imposing an indeterminate sentence must fix the minimum and maximum limits of the sentence to be served within the limits provided by law. Neb. Rev. Stat. § 29-2204(1)(a) (Cum. Supp. 1994). In setting an indeterminate sentence, there must be a difference between the periods, and a sentence fixing identical minimum and maximum terms of imprisonment is not an indeterminate sentence. See, *Duffy v. State*, 730 P.2d 754 (Wyo. 1986); *People v. Buxton*, 28 Ill. App. 3d 429, 328 N.E.2d 703 (1975); *People v. Haggitt*, 33 Mich. App. 95, 189 N.W.2d 842 (1971) (Levin, J., dissenting); *The People v. Westbrook*, 411 Ill. 301, 103 N.E.2d 494 (1952); 21 Am. Jur. 2d *Criminal Law* § 542 (1981). Therefore, if the sentences imposed upon Wilson were intended to be indeterminate, they missed their mark. However, we do note that there is nothing in § 29-2204(1)(a) mandating that an indeterminate sentence must be imposed, nor is there a requirement that the minimum and maximum terms of such a sentence differ by any specific span of time. Indeed, the prior law setting a maximum minimum term of an indeterminate sentence, Neb. Rev. Stat. § 83-1,105 (Reissue 1987), was repealed by the Legislature in 1993 Neb. Laws, L.B. 529.

In sum, we find that setting the same minimum and maximum limit to a sentence is a violation of the indeterminate sentencing statute. Therefore, the district court's sentences of identical minimum and maximum terms were not indeterminate sentences. The total sentence imposed by the trial court was for a period of 62 years. During the sentencing hearing, the judge indicated to Wilson, "I think they will release you in 31 years." There is nothing to indicate whether Wilson would be eligible for parole in 31 years or whether he would be eligible to obtain

a full discharge in 31 years. Although Wilson was sentenced to a definite term of years, the record reflects that the court attempted to set a minimum and a maximum limit as to each sentence. Therefore, we cannot find that the sentences were flat sentences. Frankly, we are uncertain as to what sentences were intended by the district court.

The criminal sentencing process demands more certainty than that provided by the sentences in this case. The question of whether a sentence is excessive depends, at the most fundamental of levels, upon what the sentence is. Since we are unable to make that determination here, we conclude that the sentences imposed were an abuse of discretion. Therefore, we must reverse Wilson's sentences and remand the cause for resentencing.

## V. CONCLUSION

We affirm the admission of testimony concerning Wilson's similar acts under § 27–404(2), and we find that the evidence was sufficient to support Wilson's attempted second degree murder conviction. However, because we find that the sentences imposed upon Wilson were an abuse of discretion, we reverse, and remand for resentencing.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.

SIEVERS, Chief Judge, concurring in part, and in part dissenting.

I wholeheartedly concur in the opinion and decision of my colleagues, except that portion which remands this matter to the district court for resentencing. From that portion of the majority opinion, I find I must respectfully dissent. The majority's reasoning is that by announcing separate minimum and maximum sentences, without any differential between the minimum and maximum terms imposed, the district court violated the indeterminate sentencing statute.

The majority assumes, first, an intent to impose an indeterminate sentence by the trial judge and, second, that the indeterminate sentencing statute of necessity requires a differential between the minimum and maximum terms imposed. In the first instance, given the sentences imposed, it

is difficult for me to attribute to the trial judge an intent that Wilson have the benefit of the indeterminate sentencing statute. In the second instance, I find nothing in the indeterminate sentencing statute which requires a differential between the minimum and maximum, although such a differential obviously makes sense if there truly is to be an indeterminate sentence. I believe that the trial judge intended flat sentences, rather than indeterminate sentences, and that he saw these sentences as the way to ensure that Wilson would do all of the time he was sentenced to do—except for such good time as he might earn while imprisoned. I can find no evidence that a flat sentence is prohibited by Nebraska sentencing statutes, and thus there is no basis to remand.

The majority concludes that it is "uncertain as to what sentences were intended by the district court." I do not have that problem—the trial judge clearly intended that it would be a long time, as it should be, before Wilson would again draw a breath of free air. I would affirm the sentences imposed by the district court.