REQUESTED BY: Harold W. Clarke, Director Nebraska Department of Correctional Services
You have asked several questions about the proper interpretation of determinate sentences. A determinate or "flat" sentence states only one term of years. An indeterminate sentence includes a maximum term to be used to compute the defendant's discharge date, and a minimum term to be used to compute the defendant's parole eligibility date.
Before addressing your questions, we will summarize the recent statutory changes affecting determinate and indeterminate sentencing in Nebraska.
In 1972, the Nebraska legislature amended Neb. Rev. Stat. § 83-1,105 to mandate indeterminate sentencing by operation of law. See Laws 1972, LB 1499, § 5. The statute provided:
 Except where a term of life is required by law, in imposing an indeterminate sentence upon the offender, the court may:
 (1) Fix the minimum and maximum limits of the sentence, but the minimum fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term, and the maximum limit shall not be greater than the maximum provided by law;
 (2) Impose a definite term of years in which event the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum provided by law[.]
Under this statute, if a judge attempted to impose a determinate sentence, the statutory minimum was automatically used to determine the inmate's parole eligibility.
LB 529, known as Nebraska's "Truth in Sentencing" legislation, was enacted effective September 9, 1993. LB 529 repealed § 83-1,105 and replaced it with an amended §29-2204, which read as follows:
 (1) Except when a term of life is required by law, in imposing an indeterminate sentence upon an offender the court shall:
 (a) Fix the minimum and maximum limits of the sentence to be served within the limits provided by law, except that when a maximum limit of life is imposed by the court for a Class IB felony, the minimum limit may be any term of years not less than the statutory mandatory minimum;
 (b) Advise the offender on the record the time the offender will serve on his or her minimum term before attaining parole eligibility assuming that no good time for which the offender will be eligible is lost; and
 (c) Advise the offender on the record the time the offender will serve on his or her maximum term before attaining mandatory release assuming that no good time for which the offender will be eligible is lost.
 If any discrepancy exists between the statement of the minimum limit of the sentence and the statement of parole eligibility or between the statement of the maximum limit of the sentence and the statement of mandatory release, the statements of the minimum limit and the maximum limit shall control the calculation of the offender's term. If the court imposes more than one sentence upon an offender or imposes a sentence upon an offender who is at that time serving another sentence, the court shall state whether the sentences are to be concurrent or consecutive.
The legislative history of LB 529 makes clear the fact that the bill was designed to eliminate indeterminate sentencing by operation of law. When introducing LB 529 before the Judiciary Committee on February 25, 1993, the principal sponsor, Senator Carol Pirsch, said:
 This bill would provide for truth in sentencing. . . . The general public, I don't think, has a clear idea of the amount of time that a sentenced offender is likely to spend in custody. I believe the public and victims of crime have a right to know that the sentence that is pronounced by a court and the sentence which an inmate will actually serve are two very different things. . . . How this would work and why I believe this is needed is perhaps best understood by an example. Assume that you read in the newspaper that as a victim of a convicted rapist you saw him sentenced to 50 years in prison with no minimum sentence specified. Most people probably would think that sounds like a pretty tough sentence. However, under Nebraska law that offender would be eligible for parole in just six months. . . . I don't think anyone could sincerely argue that our present system fully discloses the actuality of sentencing punishment in our state. It's deceptive. We prohibit deceptive trade practices and deceptive advertising, and I believe it's time we have full disclosure in sentencing.
In 1997, the Nebraska legislature enacted LB 364, with an operative date of July 1, 1998. LB 364 reinstates indeterminate sentencing by operation of law with the following language:
 Except where a term of life is required by law, in imposing an indeterminate sentence upon an offender the court shall:
 (1) Fix the minimum and maximum limits of the sentence to be served within the limits provided by law for any class of felony other than a Class IV felony, except that when a maximum limit of life is imposed by the court for a Class IB felony, the minimum limit may be any term of years not less than the statutory mandatory minimum. If the criminal offense is a Class IV felony, the court shall fix the minimum and maximum limits of the sentence, but the minimum limit fixed by the court shall not be less than the minimum provided by law no more than one-third of the maximum term and the maximum limit shall not be greater than the maximum provided by law.
 (2) Impose a definite term of years, in which event the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum sentence provided by law[.]
The present authority of Nebraska courts to impose determinate sentences was recognized by the Nebraska Supreme Court in State v. Cook, 251 Neb. 781 (1997), and by the Nebraska Court of Appeals in State v. DuBray, 5 Neb. App. 496 (1997). InCook, the defendant received a life sentence for first degree murder and a sentence of 20 years to 20 years for use of a firearm to commit a felony. The Court said: The Nebraska sentencing statutes do not require that the minimum sentence be for a different term than the maximum sentence. Nor do thestatutes require that an indeterminate sentence be issued in thiscase. Cook, 251 Neb. at 782-83, emphasis added. InDuBray, the defendant received a sentence of "not less than four nor more than four years' imprisonment". The Court of Appeals noted that:
 Nothing in § 29-2204 mandates that an indeterminate sentence be imposed.
. . . .
 Current statutes also do not provide a minimum sentence when a definite term of years is imposed by the sentencing court.
. . . .
 In addition, the language used in the statutes found in Chapter 83 regarding the determination of credits for time served and the determination of dates for parole and full discharge does not require indeterminate sentencing in the sense that the maximum and minimum terms must differ or that there must be a minimum term imposed. In particular, Neb. Rev. Stat. § 83-1,106 (1) and (2) (Reissue 1994) speaks of [c]redit against the maximum term and any minimum term[.].
DuBray, 5 Neb. App. at 500-01, emphasis added.
Although decisions of the Court of Appeals may have limited use as precedent, the DuBray decision appears to be consistent with the Nebraska Supreme Court's holding in Cook. Therefore, we conclude that Nebraska courts have had the authority to impose determinant sentences since September 9, 1993 (and until July 1, 1998).
You have asked six questions regarding the application of Nebraska's sentencing statutes and the DuBray decision.
1. "Should this court decision be applied to all similarly situated inmates currently incarcerated and/or on parole? If so, what effect would this case have on inmates currently on parole that are not eligible for parole?"
ANSWER: Inmates who received determinant sentences for crimes committed on and after September 9, 1993, have no parole eligibility. So, any such inmates who have been placed on parole would be subject to parole recision proceedings due to the error in the calculation of their sentences.
2. "Does this decision require that all flat sentences be treated as sentences with no minimum terms? By statute, parole eligibility is based on the minimum term. Does this mean that on flat sentences there is no minimum term, and, therefore, no parole eligibility date? Would these inmates be required to serve their maximum prison term, less good time reductions, without the benefit of any parole consideration? For example the majority of sentences received for terms of imprisonment for up to two years rarely impose minimum terms. Most of these terms are for Class IV felonies or misdemeanor cases. Would parole eligibility also be eliminated on these sentences?"
ANSWER: With respect to inmates given determinant sentences for crimes committed on and after September 9, 1993, the answer to all of the above questions is "yes."
3. "If a person was sentenced to a term of life imprisonment for second degree murder (Class IB felony), would this individual in essence be serving a life term without any minimum term, and therefore, no parole eligibility date?"
ANSWER: With respect to inmates given a determinant sentence of life imprisonment for a second degree murder committed on or after September 9, 1993, the answer to the above question is "yes."
4. "On flat sentences, do truth-in-sentencing comments regarding the amount of time to be served toward parole eligibility override the imposition of a flat sentence that does not have a parole eligibility date?"
ANSWER: Section 29-2204 (1)(c) provides:
 If any discrepancy exists between the minimum limit of the sentence of the statement of parole eligibility or between the statement of the maximum limit of the sentence and the statement of mandatory release, the statements of the minimum limit and the maximum limit shall control the calculation of the offender's term.
So, if a court acting on or after September 9, 1993, imposed a determinant sentence, any statements made regarding parole eligibility would not be controlling. It would be the responsibility of the defendant to bring the discrepancy to the attention of an appellate court as was done in State v. Wilson,4 Neb. App. 489 (1996), to obtain a reversal and remand for resentencing to clarify.
5. "The truth-in-sentencing statute became effective on September 9, 1993. Would this court decision apply to all inmates sentenced on or after September 9, 1993, or would it apply only to inmates who committed their crimes on or after September 9, 1993?"
ANSWER: The Nebraska Constitution, like the federal Constitution, prohibits the enactment of ex post facto laws. See
U.S. Const. art. I, § 10, cl. 1; Neb. Const. art. I, § 16. A criminal law is ex post facto if it inflicts a greater punishment than the law which was applicable at the time the crime was committed. Weaver v. Graham, 450 U.S. 24 (1981). InWeaver, the U.S. Supreme Court declared that a more restrictive good time law could not be applied to inmates who committed their offenses before the effective date of the law, even though they were sentenced after the effective date. The Court declined to draw a distinction between criminal sentences and benefits such as good time which traditionally had been reviewed as acts of legislative "grace." The Court said:
 [A] law need not impair a `vested right' to violate the ex post facto prohibition.
. . . .
 The presence or absence of an affirmative, enforceable right is not relevant . . . to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.
. . . .
 The critical question is whether the law changes the legal consequences of acts completed before its effective date.
Weaver, 450 U.S. at 29-31.
In California Dept. of Corrections v. Morales,115 S.Ct. 1597 (1995), the Supreme Court did find that a mere change in the frequency of parole board hearings was not sufficient to violate the Ex Post Facto Clause because there was no reason to conclude that the change would extend or have any effect on a prisoner's actual term of confinement. Morales, 115 S.Ct. at 1604-05. In light of the reasoning of the U.S. Supreme Court in Weaver andMorales, we must conclude that determinate sentences under LB 529 may be applied only to inmates who committed their crimes on or after September 9, 1993.
6. "If this court decision must be applied, what effect would this action have on determining parole eligibility dates in the following circumstances?
a. Concurrent sentences: There are instances in which inmates are serving concurrent terms where some counts are flat sentences and other counts are indeterminate sentences. At what point does an inmate become eligible for parole on the concurrent indeterminate sentence?
b. Consecutive sentences: There are instances in which inmates are serving indeterminate sentences and then receive a consecutive flat sentence. Nebraska statutes require that the minimum and maximum terms be added together to establish parole eligibility and discharge date on the combined terms. If there is no minimum term on a flat sentence, at what point would an inmate be eligible for parole on the consolidated term?"
ANSWER: (a). If an inmate is serving concurrent terms, and some of the sentences are determinant while others are indeterminate, the inmate would not be eligible for parole until completing the longest determinant sentence and reaching parole eligibility on the longest minimum term of the indeterminate sentences.
(b). With respect to consecutive sentences, it is recognized that Neb. Rev. Stat. § 83-1,110 (Cum. Supp. 1996) provides:
 [E]very committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence, shall be eligible for release on parole when the offender has served the total of one-half the minimum terms. The maximum terms shall be added to compute the new maximum term which, less good time, shall determine the date when discharge from custody becomes mandatory.
It is also recognized that Neb. Rev. Stat. § 83-170
(9)(1994) provides:
 Minimum term shall mean the minimum sentence provided by law or the minimum sentence imposed by a court, whichever is longer.
The origin of these statutes dates back to an era when Nebraska's systems of sentencing, good time, and parole were very different. See Laws 1969, c. 817, § 1, p. 3072, and § 41 p. 3093. It is a challenging task to interpret these sections in complete harmony with LB 529, which reflects the more recent intent of the legislature.
Basic principles of statutory construction established by the Nebraska Supreme Court require that we (1) look at the statutory objective to be accomplished, problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose, rather than a construction that will defeat the purpose; and (2) conjunctively consider and construe all statutory components to determine the intent of the legislature, so that different provisions are consistent, harmonious and sensible. See, e.g., State v.Joubert, 246 Neb. 287 (1994); Anderson v. Nashua Corp.,246 Neb. 420 (1994); and In Re Guardianship Conservatorship ofBloomquist, 246 Neb. 711 (1994).
If we interpret these statutes to require the consolidation of consecutive determinate and indeterminate sentences, by creating fictional "minimum terms" for the determinate sentences, that interpretation would conflict with LB 529 and theCook and DuBray decisions. A determinate sentence does not have a minimum term equal to the statutory minimum, nor does it have a minimum term of "zero" or of "infinity." Under current law, a determinant sentence also is not the same as an indeterminate sentence with minimum and maximum terms of the same length. For example, an inmate who received a determinant sentence of ten years would never be eligible for parole. If the inmate forfeited all good time, the inmate would be required to serve ten years. An inmate who received an indeterminate sentence of ten years to ten years would be eligible for parole after serving five years, even if the inmate forfeited all good time. (Using good time laws effective July 1, 1996, pursuant to Laws 1995, LB 371).
Therefore, we suggest that § 83-1,110 and § 83-170(9) be interpreted to apply only to indeterminate sentences created by court order, or by operation of law outside the effective dates of LB 529. If an inmate becomes eligible for parole on the consolidated minimum terms of indeterminate sentences which the inmate began to serve before receiving the determinate sentence, and the Parole Board wishes to "parole" the inmate to serve the determinant sentence, the Parole Board may do so, just as the Board may parole an inmate to serve a consecutive term in another jurisdiction. In this manner, the inmate does not lose the benefit of parole eligibility on the indeterminate sentences (as would occur if a minimum term of "infinity" was inferred from a determinate sentence), and the integrity of the determinate sentence is not lost (as would occur if a minimum term equal to the statutory minimum, "zero", or the court-imposed sentence, was inferred from a determinate sentence).
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General
APPROVED BY:
Don Stenberg 
Attorney General